# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

FRONTIER BANK, a Washington
banking corporation,

Plaintiff,

and

UNION BANK, N.A., as successor-in-
interest to the Federal Deposit
Insurance Corporation, as receiver for
Frontier Bank,

Respondent,

v.

BINGO INVESTMENTS, LLC, a
Washington limited liability company;
SCOTT and KELLY BINGHAM,
husband and wife; FRANCES
GRAHAM, a single person;
CHRISTOPHER G. BINGHAM, a single
person; DAVID BINGHAM and
SHARON BINGHAM, husband and wife,

Appellants,

and

L224-1 BAYSIDE, LLC, a Washington
limited liability company; L198-1
SINCLAIR RIDGE, LLC, a Washington
limited liability company; L31-1
FENNER, LLC, a Washington limited
liability company; L150-1 PATEY, LLC,
a Washington limited liability company;
THOMAS HAZELRIGG and JANE DOE
HANZELRIGG, husband and wife;
SCOTT SWITZER and JANE DOE
SWITZER, husband and wife; and
CENTURION FINANCIAL GROUP,
LLC, a Washington limited liability
company,

Defendants.

No. 72529-7–I

DIVISION ONE

PUBLISHED

FILED: November 2, 2015

COX, J. — Frances Graham, Scott Bingham, Kelly Bingham, Christopher Bingham, Cherish Bingham, David Bingham, Sharon Bingham, and Bingo Investments LLC (collectively "the guarantors") appeal the trial court's grant of summary judgment to Union Bank. There are no genuine issues of material fact regarding either the validity or the enforceability of the guaranties they signed. Likewise, there are no genuine issues of material fact regarding the guarantors' affirmative defenses. Union Bank is entitled to judgment as a matter of law. We affirm.

Many of the relevant facts are undisputed. The guaranties that are central to the dispute before us were made in connection with promissory notes executed, respectively, by Bayside LLC, Sinclair Ridge LLC, Bingo Investments LLC, and Frances Graham ("the borrowers"). The loans financed the borrowers' residential developments in Kitsap County.

*Bayside Loan and Guaranties*

Bayside, LLC (Bayside) executed its promissory note dated November 15, 2006 in favor of Frontier Bank in the original principal amount of $22,050,000. By virtue of successive change in terms agreements, the principal amount of the note was reduced to $19,420,000.00, with a maturity date of March 31, 2009 (Bayside Note).

This note was secured by a recorded construction deed of trust that encumbered certain real property located in Kitsap County, Washington.

David Bingham and Sharon Bingham each executed a Commercial Guaranty dated November 15, 2006 in favor of Frontier Bank. This is an unconditional guaranty of payment of the Bayside Note.

2

Christopher Bingham also executed a Commercial Guaranty dated March 31, 2008 in favor of Frontier Bank. This is an unconditional guaranty of payment of the Bayside Note.

These guarantors also signed notices of final agreement in which they acknowledged that oral agreements in connection with loans are not enforceable under Washington law.[1]

Bayside defaulted on the Bayside Note when it failed to repay it upon maturity on March 31, 2009.

Union Bank is the holder and in possession of the Bayside Note and the unconditional commercial guaranties of payment of the Bayside Note from David Bingham, Sharon Bingham, and Christopher Bingham.

*Sinclair Loans and Guaranties*

Sinclair Ridge, LLC (Sinclair) executed its promissory note dated November 15, 2006 in favor of Frontier Bank in the original principal amount of $12,876,500.00. By virtue of successive change in terms agreements, the principal amount of the note was reduced to $12,158,761.92, with a maturity date of March 31, 2009 (Sinclair Note #1).

Sinclair Note #1 was secured by a recorded construction deed of trust that encumbered certain real property located in Kitsap County, Washington.

---

[1] RCW 19.36.110 (specifying that a credit agreement "is not enforceable against the creditor unless the agreement is in writing and signed by the creditor."). RCW 19.36.100 defines a "credit agreement" as an "agreement, promise, or commitment" to do or refrain from doing certain activities in connection with a "debt or other extension of credit."

Sinclair executed its second promissory note dated March 16, 2007 in favor of Frontier Bank in the original principal amount of $113,750. By virtue of a change in terms agreement, this note was modified (Sinclair Note #2).

Sinclair Note #2 was secured by a recorded deed of trust that encumbered certain real property located in Kitsap County, Washington.

Sinclair executed its third promissory note in favor of Frontier Bank in the original principal amount of $227,500. By virtue of a change in terms agreement, this note was modified (Sinclair Note #3).

Sinclair Note #3 was secured by a recorded deed of trust that encumbered real property located in Kitsap County, Washington.

David Bingham and Sharon Bingham each executed a November 15, 2006 Commercial Guaranty in favor of Frontier Bank unconditionally guaranteeing payment of all Sinclair notes in favor of Frontier Bank.

These guarantors also signed notices of final agreement in which they acknowledged that oral agreements in connection with loans are not enforceable under Washington law.

Sinclair defaulted on all three Sinclair notes when it failed to repay them when they matured.

In August 2011, the Kitsap County Superior Court appointed a general receiver to take control of Sinclair Ridge LLC, with authority to market its assets. The state receiver listed, marketed, and sold the real property subject to the deeds of trust securing the loans by Frontier. The net sales proceeds were applied to the Sinclair notes, reducing the outstanding indebtedness evidenced by these notes and the guaranties of these notes.

Union Bank is the holder and in possession of the Sinclair notes and the unconditional commercial guaranties of payment of the Sinclair notes from David Bingham and Sharon Bingham.

### Bingo Loans and Guaranties

Bingo Investments, LLC (Bingo) executed its promissory note dated March 31, 2008 in favor of Frontier Bank in the original principal amount of $2,000,000. The note was modified by a change in terms agreement (Bingo Note # 1). Bingo and Frances Graham also executed a promissory note dated March 31, 2008 in favor of Frontier Bank in the original principal amount of $5,500,000 (Bingo Note # 2).

Christopher Bingham, Frances Graham, and Scott Bingham each executed a Commercial Guaranty dated March 31, 2008 unconditionally guaranteeing payment of all notes owed by Bingo to Frontier Bank.

These guarantors also signed notices of final agreement in which they acknowledged that oral agreements in connection with loans are not enforceable under Washington law.

Bingo defaulted on Bingo Note #1 when it failed to repay it upon maturity on September 30, 2009. Bingo defaulted on Bingo Note #2 when it failed to repay it upon maturity on March 31, 2009.

Union Bank is the holder and in possession of the Bingo notes and the commercial guaranties from Christopher Bingham, Frances Graham, and Scott Bingham unconditionally guaranteeing payment of the Bingo notes.

On April 30, 2010, the Washington State Department of Financial Institutions closed Frontier. The Federal Deposit Insurance Corporation (FDIC)

was appointed as receiver of Frontier to liquidate the bank's assets and conclude its affairs.

Union Bank purchased certain assets of Frontier from the FDIC. These assets included the notes, guaranties, and other loan documents that are the subjects of this action.

In connection with the sale of certain assets of Frontier to Union Bank, the FDIC also granted to Union Bank the authority to assert rights under 12 U.S.C. § 1823(e).[2]

Thereafter, Union Bank became a party plaintiff in this action that Frontier previously commenced against the guarantors. Union Bank moved for summary judgment against the guarantors. After a hearing, the trial court granted this motion. The trial court subsequently denied the guarantors' motion for reconsideration.

This appeal followed.

## THE GUARANTIES

The guarantors argue that the trial court erred by granting summary judgment to enforce the guaranties. They alleged that a "material dispute of fact [exists] as to whether the guarantees are void or voidable." Because there is no such issue of material fact, we disagree.

Summary judgment is appropriate "if the pleadings, affidavits, and depositions establish that there is no genuine issue as to any material fact and

---

[2] Clerk's Papers at 599.

the moving party is entitled to judgment as a matter of law."[3] "A genuine issue of material fact exists if 'reasonable minds could differ on the facts controlling the outcome of the litigation.'"[4]

The party moving for summary judgment "bears the initial burden of showing the absence of a genuine issue of material fact."[5] If the moving party satisfies its burden, then the burden shifts to the nonmoving party.[6] "If the nonmoving party fails to make a showing sufficient to establish the existence of a genuine issue of material fact, then the trial court should grant the motion."[7]

"In making this responsive showing, the nonmoving party cannot rely on the allegations made in its pleadings" because "CR 56(e) requires that the response . . . 'set forth specific facts showing that there is a genuine issue for trial.'"[8] "[T]he court considers the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party."[9]

We review de novo a trial court's grant of summary judgment.[10]

---

[3] Wash. Fed. v. Harvey, 182 Wn.2d 335, 340, 340 P.3d 846 (2015) (quoting Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000)); accord CR 56(c).

[4] Knight v. Dep't of Labor & Indus., 181 Wn. App. 788, 795, 321 P.3d 1275 (quoting Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008)), review denied, 339 P.3d 635 (2014).

[5] Block v. City of Gold Bar, __ Wn. App. __, 355 P.3d 266, 270 (2015).

[6] Id.

[7] Id.

[8] Id. (quoting Young v. Key Pharms., Inc., 112 Wn.2d 216, 225-26, 770 P.2d 182 (1989)).

[9] Id.

[10] Wash. Fed., 182 Wn.2d at 339.

We review for abuse of discretion a trial court's denial of a motion for reconsideration.[11]

*Nature of Guaranty Obligations*

"A guaranty 'is a promise to answer for the debt, default, or miscarriage of another person.' 'A contract of guaranty, being a collateral engagement for the performance of an undertaking of another, imports the existence of two different obligations, one being that of the principal debtor and the other that of the guarantor.'"[12] A guaranty "'is independent'" of the debt, "'and the responsibilities which are imposed by the . . . guaranty differ from those . . . created by the contract to which the guaranty is collateral.'"[13] "A written guarantee of payment of the principal's indebtedness . . . [is] governed by its own terms."[14]

Because guaranties are contracts, they are subject to the general rules of contract formation, interpretation, and construction.[15] Although these contracts "must be explicit and are strictly construed," courts "must also recognize the commercial context in which" guaranties are signed.[16]

---

[11] Kenco Enters. Nw., LLC v. Wiese, 172 Wn. App. 607, 614, 291 P.3d 261, review denied, 177 Wn.2d 1011 (2013).

[12] Sauter ex rel. Sauter v. Houston Cas. Co., 168 Wn. App. 348, 356, 276 P.3d 358 (2012) (citation omitted) (internal quotation marks omitted) (quoting Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wn.2d 692, 707, 952 P.2d 590 (1998)).

[13] Wilson Court Ltd. P'ship, 134 Wn.2d at 707 (quoting Robey v. Walton Lumber Co., 17 Wn.2d 242, 255, 135 P.2d 95 (1943)); accord Freestone Capital Partners, LP v. MKA Real Estate Opportunity Fund I, LLC, 155 Wn. App. 643, 661, 230 P.3d 625 (2010).

[14] McAllister v. Pier 67, Inc., 1 Wn. App. 978, 983, 465 P.2d 678 (1970).

[15] Wilson Court Ltd. P'ship, 134 Wn.2d at 699; accord Bellevue Square Managers v. Granberg, 2 Wn. App. 760, 766, 469 P.2d 969 (1970).

[16] Wilson Court Ltd. P'ship, 134 Wn.2d at 705.

"[W]here a guarantor freely and voluntarily guarantees the payment of another, and a creditor relies to its detriment on this guaranty, the law generally requires the guaranty to be enforced."[17] "'An absolute guaranty is an unconditional undertaking on the part of the guarantor that the person primarily obligated will make payment or will perform, and such a guarantor is liable immediately upon default of the principal without notice.'"[18] "An absolute and unconditional guaranty should be and is enforceable according to its terms. The courts are to enforce it as the parties meant it to be enforced, with full effect given to its contents, and without reading into it terms and conditions on which it is completely silent."[19]

Here, the parties do not dispute the guaranties' language. Each guaranty states:

> For good and valuable consideration, **Guarantor absolutely and unconditionally guarantees full and punctual payment** and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. **This is a guaranty of payment** and performance and not of collection . . . . Guarantor will make any payments to Lender . . . on demand . . . **without set-off or deduction or counterclaim,** and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.[20]

---

[17] In re Spokane Concrete Prods., Inc., 126 Wn.2d 269, 278, 892 P.2d 98 (1995).

[18] Century 21 Prods. Inc. v. Glacier Sales, 129 Wn.2d 406, 414, 918 P.2d 168 (1996) (quoting Joe Heaston Tractor & Implement Co. v. Sec. Acceptance Corp., 243 F.2d 196 (10th Cir. 1957)); see also Grayson v. Platis, 95 Wn. App. 824, 826, 978 P.2d 1105 (1999).

[19] Nat'l Bank of Wash. v. Equity Inv'rs, 81 Wn.2d 886, 919, 506 P.2d 20 (1973).

[20] Clerk's Papers at 636, 640, 644, 710, 714, 733, 737, and 741 (emphasis added).

There can be no serious dispute that the express terms of the guaranties make them unconditional guaranties of payment. The promissory notes that these guaranties support are delinquent. Accordingly, the obligations of the guarantors are also delinquent and unpaid.

We next consider the guarantors' affirmative defenses. The nature of these defenses has shifted over time.

In their response below to Union Bank's motion for summary judgment, they identified five numbered issues.[21] On appeal, they abandoned two of those five, adding others for the first time.[22] Based on a fair reading of the actual arguments made in their opening brief on appeal, we conclude they have three main arguments on appeal.

First, they claim that Frontier fraudulently induced them to sign the guaranties and other loan documents in March and December 2008. Second, they claim Frontier acted in bad faith. Finally, they claim that the state and federal statutory bars to consideration of oral agreements that Union Bank asserts are inapplicable to their affirmative defenses.

*Washington Statute of Frauds—Credit Agreements: RCW 19.36.110*

As a threshold matter, Union Bank argues that the credit agreement statute of frauds bars considering the documents on which the guarantors rely for their affirmative defenses. We agree.

---

[21] Id. at 347.

[22] Brief of Appellants at 2-3.

RCW 19.36.110, Washington's statute of frauds, bars the enforcement of "credit agreements" that are not in writing and signed by the creditor:

> A *credit agreement* is not enforceable against the creditor *unless the agreement is in writing and signed by the creditor.* The rights and obligations of the parties to a credit agreement *shall be determined solely from the written agreement,* and any prior or contemporaneous oral agreements between the parties are superseded by, merged into, and may not vary the credit agreement. Partial performance of a credit agreement does not remove the agreement from the operation of this section.

RCW 19.36.100 defines "credit agreement" as:

> an agreement, promise, or commitment to lend money, to otherwise extend credit, to forbear with respect to the repayment of any debt or the exercise of any remedy, to modify or amend the terms under which the creditor has lent money or otherwise extended credit, to release any guarantor or cosigner, or to make any other financial accommodation pertaining to a debt or other extension of credit.

Here, the guarantors primarily rely on two documents to support their affirmative defenses opposing the summary judgment motion. But the provisions of RCW 19.36.110 bar consideration of both documents.

Cowlitz Bank v. Leonard is instructive with respect to the application of these statutes to alleged oral agreements in connection with loans.[23] There, Cowlitz Bank loaned funds to Tytan International, Inc.[24] These loans were evidenced by a series of promissory notes and change in terms agreements.[25]

---

[23] 162 Wn. App. 250, 253, 254 P.3d 194 (2011).

[24] Id. at 252.

[25] Id.

11

Mark Leonard was a guarantor of the promissory notes signed by Tytan.[26] The loans matured and neither Tytan nor Leonard paid them.[27]

The bank sued Leonard.[28] He asserted affirmative defenses and counterclaims.[29] Among them was the claim that the bank had fraudulently induced him into not changing banks by orally promising to continue increasing his loan amounts.[30] He also claimed the bank orally promised not to pursue collection of the loan.[31]

The bank moved for summary judgment, asserting "that RCW 19.36.110 bars the enforcement of any oral agreements not contained in the written loan documents."[32] The trial court granted the motion.[33] Division Two of this court affirmed on Leonard's appeal.[34] The court held that the "representations that Leonard alleges Cowlitz Bank made, even if proved, would constitute oral agreements to loan money, extend credit, or forbear from enforcing repayment."[35]

---

[26] Id.

[27] Id.

[28] Id.

[29] Id.

[30] Id.

[31] Id.

[32] Id.

[33] Id.

[34] Id. at 254.

[35] Id. at 253.

Here, these guarantors also claim Frontier fraudulently induced them to sign the guaranties and other documents in March and December 2008. They do not make any claims that the guaranties they signed prior to that period are unenforceable for this reason. Thus, the guaranties dated November 15, 2006 are not at issue.

One document on which they rely is the Declaration of Scott Switzer dated January 19, 2010. This document, not signed by Frontier, chiefly states that there are alleged oral communications that affect the validity of the guaranties.

Examination of the declaration shows that it fails to evidence the existence of any genuine issue of material fact regarding fraudulent inducement of the guaranties. For example, Switzer testifies, in part, that:

> Given all of Frontier's assurances at the time the original loans were established, when the additional lines of credit were issued, and even after the interest reserves were cancelled, and after it filed suit, I was shocked that Frontier had reneged upon its agreement to forebear [collection of the loans].[36]

But such alleged "agreement to forebear" is not evidenced in any writing signed by Frontier.[37] Accordingly, it falls squarely within the definition of an alleged oral agreement that is not enforceable under the plain words of RCW 19.36.110.

The rest of the testimony in the declaration fares no better. The essence of most of this testimony is that Frontier made untrue oral representations concerning regulatory compliance of the loans to the borrowers that the

---

[36] Clerk's Papers at 914.

[37] Id.

13

guarantors guaranteed. The guarantors claim that Frontier should have collected the loans before they became obligated to pay them under their unconditional guaranties of payment. They support this argument by relying on a copy of a document titled "Credit Limit Analysis-Frontier Bank," marked "Exhibit A."[38]

First, Exhibit A shows a list of borrowers, loan amounts, and guarantors. It says nothing about regulatory compliance of the guaranteed loans. Moreover, it does not show any representations by Frontier to the guarantors.

Second, Exhibit A is not signed by Frontier, the creditor. Thus, to the extent the guarantors seek to use it to support alleged oral representations by Frontier regarding the guaranteed loans, they cannot do so. The statute of frauds bars this.

Third, significantly, the Switzer declaration does not address any of the nine elements of fraud underlying the guarantors' affirmative defense that Frontier fraudulently induced them to sign the March and December 2008 documents. Likewise, it fails to show that he has any personal knowledge of what, if any, representations Frontier made to the guarantors about their guaranties.

"There are nine essential elements of fraud, all of which must be established by clear, cogent, and convincing evidence:

> (1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of

---

[38] Id. at 917.

the representation, (8) the right to rely upon it, and (9) consequent damage."[39]

As we just stated, there is a notable absence in Switzer's declaration of any evidence regarding oral representations by Frontier to the guarantors, as opposed to the borrowers. And, significantly, no guarantor submitted a declaration in opposition to the motion for summary judgment to evidence any of the nine elements of fraud allegedly committed by Frontier. For example, there is nothing from any guarantor to evidence the sixth, seventh, or eighth elements of their fraud claim. In the absence of such evidence, we must assume there is none. And absent any one of the nine elements, the claim fails.

The second document on which the guarantors rely to oppose summary judgment is a Frontier loan memorandum dated March 13, 2008. Notably, it predates the March 31, 2008 guaranties that are at issue here.

Nowhere does this document support the guarantors' conclusory arguments that Frontier fraudulently induced them to sign the March 2008 and December 2008 documents. It says nothing of representations by Frontier to the guarantors that support any of the nine elements of fraud that the guarantors must show exist.

In its briefs and at the hearing, the guarantors also mentioned the December 2010 Material Loss Review of Frontier that the FDIC performed after Frontier closed. But even that document fails to reflect either fraudulent schemes or fraudulent representations to the guarantors of these loans to the borrowers.

---

[39] Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 166, 273 P.3d 965 (2012).

That Frontier failed does not entitle the guarantors to be relieved of their obligations under their guaranties.

Even if the affirmative defense of fraudulent inducement applied to bar enforcement of the guaranties and other documents signed in March and December 2008, certain of the guarantors executed their guaranties well before both of these dates. They do not argue why their previous guaranties are not enforceable. Absent such argument, we assume there is none to bar enforcement of their previous guaranties of the delinquent loans. In sum, there is no genuine issue of material fact regarding the enforceability of the prior guaranties.

As for the guarantors' claim that interest reserves for the loans to the borrowers should have been made available to those loans to keep them current, we are unpersuaded that this claim bars enforcement of the guaranties. First, the guaranties are unconditional guaranties of payment. Thus, the obligation is not contingent on interest reserves being made available to keep the loans to the borrowers current. Second, even if making the interest reserves available was relevant to the obligations of the guarantors, the substantial size of these loans could not have possibly been satisfied at maturity by interest reserves. The principal amounts of the loans plus delinquent interest would have far exceeded any interest reserves.

In sum, the guarantors have failed in their burden to show the existence of any genuine issue of material fact to support the claim that Frontier fraudulently induced them to sign their guaranties. The same is true for the claim that the use of interest reserves conditions their obligations on their guaranties.

16

*12 U.S.C. § 1823(e) and the D'Oench Doctrine*

Union Bank next argues that 12 U.S.C. § 1823(e) and the D'Oench

doctrine also bar consideration of the two documents on which the guarantors

rely to oppose summary judgment. We again agree.

12 U.S.C. § 1823(e)(1) provides:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement—
>
> (A) is in **writing**,
>
> (B) was executed by the depository institution **and** any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (C) was **approved by the board of directors of the depository institution or its loan committee**, which approval shall be reflected in the minutes of said board or committee, **and**
>
> (D) has been, continuously, from the time of its execution, **an official record of the depository institution**.[40]

Kanany v. Union Bank, N.A., a federal case from the Western District of

Washington, is instructive on how this federal statute applies to facts very similar

to those in this case.[41]

---

[40] (Emphasis added.)

[41] No. C11-6062 RJB, 2012 WL 5258847 (W.D. Wash. Oct. 24, 2012). Pursuant to state GR 14.1(b), citation to an unpublished opinion from jurisdictions other than Washington State is allowed if citation "is permitted under the law of the jurisdiction of the issuing court." Federal Rule of Appellate Procedure 32.1(a) prohibits federal courts from restricting citation to unpublished opinions issued on or after January 1, 2007. Because Kanany was decided in October 2012, we cite that opinion here. See Duncan v. Alaska USA Fed. Credit Union, Inc., 148 Wn. App. 52, 67 n.54, 199 P.3d 991 (2008).

There, Robert Kanany obtained a number of loans from Frontier.[42] The loans were evidenced by promissory notes and secured by deeds of trust encumbering various properties.[43]

On April 30, 2010, the Washington State Department of Financial Institutions closed Frontier.[44] The FDIC became the receiver of Frontier.[45]

That same day, Union Bank acquired from the FDIC the loans to Kanany, Frontier's former assets.[46] This transfer was memorialized in a Purchase and Assumption Agreement.[47] According to the terms of that agreement:

> "[t]he Assuming Institution shall notify the Receiver in writing . . . prior to utilizing in any legal action any special legal power or right which the Assuming Institution derives as a result of having acquired an asset from the Receiver, and the Assuming Institution shall not utilize any such power unless the Receiver shall have consented in writing to the proposed usage."[48]

> According to the declaration of Matthew Turetsky, legal counsel for Union Bank, the FDIC has authorized Union Bank to assert special powers set forth in 12 U.S.C. § 1823(c) and 12 U.S.C. 1825(b)(3). Union Bank has thus acquired certain assets of Frontier Bank, in accord with statutory authority and pursuant to contract.[49]

---

[42] Id. at *1.

[43] Id.

[44] Id. at *2.

[45] Id.

[46] Id.

[47] Id.

[48] Id. (citations omitted).

[49] Id. (citations omitted).

18

Kanany commenced an action against Union Bank, claiming breach of contract and breach of good faith and fair dealing, as well as other causes of action.[50] The breach of contract claim was based on alleged dealings with Frontier.[51] The case was removed to federal court on the basis of diversity of citizenship.[52]

Kanany argued that his primary contact in arranging the various loans with Frontier was a bank officer.[53] He claimed that this officer made various oral promises and assurances to him regarding his failure to make payments on certain loans.[54]

Union Bank moved for summary judgment.[55] In doing so, it argued that Kanany's claims were barred by D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.[56] and 12 U.S.C. § 1823(e).[57] The court discussed both the D'Oench doctrine and 12 U.S.C. § 1823(e):

> The federal D'Oench doctrine prohibits a party from asserting a cause of action against the FDIC or its assignees based upon unwritten agreements or other schemes alleged to be entered into by a failed bank. Langley v. FDIC, 484 U.S. 86, 92–93, 108 S. Ct. 396, 98 L. Ed. 2d 340 (1987). In D'Oench[,] Duhme & Co. v. FDIC, 315 U.S. 447, 62 S. Ct. 676, 86 L. Ed. 956 (1942), the United

---

[50] Id. at *3.

[51] Id.

[52] Id.

[53] Id.

[54] Id.

[55] Id.

[56] 315 U.S. 447, 62 S. Ct. 676, 86 L. Ed. 956 (1942).

[57] Kanany, 2012 WL 5258847, at *3.

19

States Supreme Court enunciated this doctrine, which is intended to protect the FDIC and its assignees from fraudulent schemes by borrowers of failed institutions. The doctrine also protects the FDIC by allowing bank representatives to rely solely on the records of the bank in evaluating the bank's financial condition, rather than leaving it exposed to suits founded on undisclosed conditions or deceptive documents. FDIC v. Zook Bros. Constr. Co., 973 F.2d 448, 1450–51 (9th Cir. 1992).

The doctrine established in D'Oench was codified and expanded in 12 U.S.C. § 1823(e), as part of the Federal Deposit Insurance Act.[58]

The court quoted the provisions of the federal statute that we quoted earlier in this opinion. They set forth four requirements, all of which must exist in order for an "'agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it [from a failed financial institution] . . .'" to be effective.[59]

The court then stated who may assert the provisions of the doctrine and statute:

> Either the FDIC or an assignee of the FDIC can assert the D'Oench doctrine/ Section 1823 as an affirmative defense in litigation brought by a borrower who relies on oral conditions, promises, or agreements. See Fed. Fin. Co. v. Hall, 108 F.3d 46, 49 (4th Cir. 1997); Nw. Land & Inv., Inc. v. New W. Fed. Sav. & Loan Ass'n, 64 Wash.App. 938, 943–44, 827 P.2d 334 (1992). The statutory term "agreement" in 12 U.S.C. § 1823 is defined more broadly than a mere promise, and includes the "truthfulness of a warranted fact." Langley v. FDIC, 484 U.S. at 92–93. "Such [oral] contracts cannot be enforced even when a bank fraudulently induces a customer with oral misrepresentations, or when a customer is completely innocent." Nw Land & Inv., Inc., 64 Wash.App. at 944, 827 P.2d 334.[60]

---

[58] Id. at *5.

[59] Id. (quoting 12 U.S.C. § 1823(e)(1)).

[60] Id. (some alternations in original).

Because Kanany could not show that any of the alleged agreements existed in writing and were signed by both him and Frontier, he failed to show the existence of any genuine issue of material fact for summary judgment purposes.

In the words of the court:

> [T]he law cannot allow his claims to go forward without written documentation of an executed agreement between himself and Frontier Bank.[61]

As the majority of the federal circuit courts have held "the D'Oench, Duhme rule protects the FDIC's assignees as well, even though § 1823(e) is silent with regard to assignees."[62] Here, the FDIC expressly authorized Union Bank to assert rights under this statute. Accordingly, Union Bank is entitled to the benefits of this statute.

The application of this federal statute to the guarantors' affirmative defenses is similar to what we discussed in our application of the state credit agreements statute of frauds. That is, the federal statute, for largely the same reasons, bars consideration of the two documents on which the guarantors primarily rely.

But there are additional reasons that apply only to the federal statute. To the extent that the guarantors rely on oral representations, they cannot do so unless they rely on a writing signed by *both* the guarantors and Frontier. They have no such document.

---

[61] Id. at *6.

[62] Fed. Fin. Co. v. Hall, 108 F.3d 46, 49 (4th Cir. 1997); see also, e.g., Newton v. Uniwest Fin. Corp., 967 F.2d 340, 347 (9th Cir. 1992); Porras v. Petroplex Sav. Ass'n, 903 F.2d 379 (5th Cir. 1990); Carteret Sav. Bank v. Compton, Luther & Sons, 899 F.2d 340 (4th Cir. 1990); FDIC v. Newhart, 892 F.2d 47 (8th Cir. 1989).

Moreover, the record shows that they cannot meet any of the other three requirements of the federal statute. There is nothing in this record that even shows they have tried to do so.

As for their fraudulent inducement argument, the guarantors fail to deal with the leading case on whether such a claim can be successfully asserted under this federal statute. The United States Supreme Court has held that it cannot.

In Langley v. Federal Deposit Insurance Corp., the Court determined whether an alleged scheme, that a borrower in default on a commercial loan claimed existed, could be asserted against the FDIC.[63] The agency had succeeded to the failed bank's position as the holder of notes and guaranties for the loan the failed bank had made.[64]

The Court referred to its earlier decision in D'Oench. It stated:

> [This] Court held that this "secret agreement" could not be a defense to suit by the FDIC because it would tend to deceive the banking authorities. The Court stated that when the maker "lent himself to a *scheme or arrangement* whereby the banking authority . . . was likely to be misled," that scheme or arrangement could not be the basis for a defense against the FDIC. We can safely assume that Congress did not mean "agreement" in § 1823(e) to be interpreted so much more narrowly than its permissible meaning as to disserve the principle of the leading case applying that term to FDIC–acquired notes. Certainly, one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities, whether the condition consists of performance of a counterpromise (as in D'Oench, Duhme ) or of the truthfulness of a warranted fact.[65]

---

[63] 484 U.S. 86, 90, 108 S. Ct. 396, 98 L. Ed. 2d 340 (1987).

[64] Id. at 89.

[65] Id. at 92-93 (citations omitted).

22

Here, the guarantors assert the existence of a scheme by Frontier to mislead regulatory authorities and the guarantors regarding the guaranteed loans. But the guarantors fail to overcome Langley's express holding that such alleged schemes may not be asserted under § 1823(e).

The guarantors make a related argument that also fails. They contend that Union Bank knew of the deficiencies from the bank records that existed at the time it acquired the guaranties. Even if we assume this allegation, unsupported by any evidence in this record, is true, it is irrelevant to the analysis.

In Langley, the borrower made the same argument. The United States Supreme Court rejected it:

> Petitioners' fallback position is that even if a misrepresentation concerning an existing fact can sometimes constitute an agreement covered by § 1823(e), it at least does not do so when the misrepresentation was fraudulent and the FDIC had knowledge of the asserted defense at the time it acquired the note. We conclude, however, that neither fraud in the inducement nor knowledge by the FDIC is relevant to the section's application.
>
> No conceivable reading of the word "agreement" in § 1823(e) could cause it to cover a representation or warranty that is bona fide but to exclude one that is fraudulent. Petitioners effectively acknowledge this when they concede that the fraudulent nature of a *promise* would not cause it to lose its status as an "agreement." The presence of fraud could be relevant, however, to another requirement of § 1823(e), namely, the requirement that the agreement in question "ten[d] to diminish or defeat the right, title or interest" of the FDIC in the asset.[66]

Additionally, the guarantors argue that "the requirements imposed by state law, such as 'an implied covenant of good faith and fair dealing,' . . . are outside

---

[66] Id. at 93 (alteration in original) (citation omitted).

the scope of 12 U.S.C. § 1821(e)."[67] They cite New Bank of New England, N.A. v. Callahan to support this argument.[68]

But that case does not establish what they assert. In that case, the third party defendant, the FDIC, sought dismissal of the defendant's claims by asserting the D'Oench doctrine.[69] But the court found the FDIC's argument unpersuasive because the defendant's claims, including breach of an implied covenant of good faith and fair dealing, did not rely on an agreement between the parties.[70] The court denied the FDIC's motion for summary judgment on that ground. Accordingly, that court did not state that implied covenants of good faith and fair dealing are outside the scope of 12 U.S.C. § 1821(e).

The guarantors also argue that these statutes "do[] not prevent the court from considering the context of a loan to see that there are issues of fact as to illegality, fraud, and failure of good faith . . . ."[71] Because this argument is not supported by any citation to authority or cogent argument, we need not address it further.[72]

In sum, for a second and independent statutory reason, we do not further consider the documents that the guarantors submit in opposition to Union Bank's

---

[67] Brief of Appellants at 16-17; Reply Brief of Appellants at 22.

[68] 798 F. Supp. 73, 76 (D.N.H. 1992).

[69] Id.

[70] Id. at 77.

[71] Brief of Appellants at 17.

[72] See Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 248, 350 P.3d 647 (2015); RAP 10.3(a)(6).

motion for summary judgment. Accordingly, the guarantors fail to show the existence of a genuine issue of material fact for trial.

*Duty of Good Faith*

The guarantors argue that Frontier acted in bad faith because it had a duty to disclose, and failed to disclose, that the guarantors' "agent" was "dishonest" and "acting in his own interests."[73] They further argue that Union Bank used the alleged "conflict of interest" of the guarantors' fiduciary "to procure the [guarantors'] assent."[74] They also argue that Frontier concealed the fraudulent transaction leading to the March 2008 change in terms agreements. These arguments are not persuasive.

It is well-settled that "'a guarantor cannot rely upon the relationship between a lender and a borrower to create a fiduciary duty running from the lender to the guarantor.'"[75] Here, the guarantors attempt to create a duty for Union Bank by arguing that it had a duty to disclose to the guarantors the allegedly fraudulent transaction leading to the March 2008 change in terms agreements. But that transaction involved only Frontier, Bingo, a borrower of Frontier, and another entity that was also a borrower of Frontier. Thus, the guarantors improperly rely on Frontier's non-existent duty to Bingo, its borrower, in that transaction to argue that they, the guarantors, were owed a duty of disclosure.

---

[73] Reply Brief of Appellants at 14.

[74] Brief of Appellants at 15.

[75] Grayson, 95 Wn. App. at 833 (quoting Miller v. U.S. Bank of Wash., N.A., 72 Wn. App. 416, 426, 865 P.2d 536 (1994)).

25

The guarantors cite Spokane Union Stockyards Co. v. Maryland Casualty Co.[76] to support their argument that "'the guarantor is entitled to a full disclosure of every point which would be likely to bear upon his disposition to enter into it.'"[77] But they quote that case out of context. In that case, the appellant tried to avoid liability by arguing he executed a bond for a specific business.[78] Thus, the court had to determine for whom a bond was executed, not whether a party committed fraud or acted in bad faith.[79] Accordingly, that case is not analogous to this case. Consequently, the guarantors' argument is unpersuasive.

The guarantors also argue that they did not waive the "fundamental obligations of good faith and honesty."[80] We need not address waiver to reject this argument, as we do.

"'[A]n implied duty of good faith and fair dealing [is] imposed on the parties to a contract.'"[81] With guaranties, "the creditor's [implied] covenant of good faith is to diligently pursue collection of the debt, and the guarantor may be relieved of liability on the debt where the creditor does not exercise due diligence in collection of that debt."[82]

---

[76] 105 Wash. 306, 178 P. 3 (1919).

[77] Reply Brief of Appellants at 21 (quoting Spokane Union Stockyards Co., 105 Wash. at 309).

[78] Spokane Union Stockyards Co., 105 Wash. at 314.

[79] Id. at 307-08.

[80] Reply Brief of Appellants at 22.

[81] Miller, 72 Wn. App. at 425 (quoting Betchard-Clayton, Inc. v. King, 41 Wn. App. 887, 890, 707 P.2d 1361 (1985)).

[82] Id.

But this court has "specifically limited claims by guarantors against lenders, including breach of good faith claims, to performance of specific contract terms."[83] Absolute guarantors lack "'any recourse against the lender unless it is alleged *and proved* that the lender acted in bad faith.'"[84] As previously stated, this court has held that "'a guarantor cannot rely upon the relationship between a lender and a borrower to create a fiduciary duty running from the lender to the guarantor.'"[85]

In sum, the common law duty of good faith does not require Union Bank to refrain from its rights under the guaranties.[86] It properly pursues its rights under the guaranties here.

*Waiver*

The guarantors argue that the guaranties they signed do not waive the affirmative defenses they assert. Union Bank argues to the contrary.

We need not address this point. Because of our prior discussion, there could be no genuine issues of material fact regarding waiver because the resolution of this dispute over the scope of waiver would not affect the outcome of this case.

---

[83] Grayson, 95 Wn. App. at 833.

[84] Id. at 831 (emphasis added) (quoting Nat'l Bank of Wash., 81 Wn.2d at 920)).

[85] Id. at 833 (quoting Miller, 72 Wn. App. at 426).

[86] See GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 126, 150, 317 P.3d 1074, review denied, 181 Wn.2d 1008 (2014).

## RECONSIDERATION

The guarantors assign error to the court's denial of their motion for reconsideration. But there is no argument on this point.[87] Accordingly, they fail to show the trial court abused its discretion in denying their motion.

## ATTORNEY FEES

Union Bank requests attorney fees on appeal based on the terms of the guaranties. Because it prevails on appeal, it is entitled to an award of reasonable attorney fees.

"The general rule in Washington is that attorney fees will not be awarded for costs of litigation unless authorized by contract, statute, or recognized ground of equity."[88]

Here, the guaranties state "Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. . . . Costs and expenses include Lender's attorneys' fees and legal expenses . . . for . . . appeals . . . ."[89]

Based on Union Bank prevailing on appeal in its enforcement of the guaranties, it is entitled to an award of reasonable attorney fees, subject to its compliance with RAP 18.1(d).

---

[87] See Darkenwald, 183 Wn.2d at 248; RAP 10.3(a)(6).

[88] Durland v. San Juan County, 182 Wn.2d 55, 76, 340 P.3d 191 (2014).

[89] Clerk's Papers at 637, 641, 645, 711, 715, 734, 738, and 742.

We affirm the trial court's grant of summary judgment and the order denying reconsideration. We also award Union Bank attorney fees on appeal, subject to its compliance with RAP 18.1(d).

_Cox, J._

WE CONCUR: