[No. 23529. Department Two. March 17, 1932.]

ARMOUR & COMPANY, *Respondent,* v. LESLIE BECKER et al., *Appellants.*[1]

[1]Reported in 9 P. (2d) 63.

246

*J. V. Hoeffler* and *Geo. E. Canfield,* for appellants.
*Philip A. Davidson,* for respondent.

HOLCOMB, J.—Respondent sued to recover, from all of appellants, $293.14 alleged to be due upon a balance of account for goods, wares and merchandise sold and delivered by respondent to appellants at their special instance and request. It is alleged that appellant Birkmaier, on April 26, 1929, entered into an agreement with respondent guaranteeing the payment of the sum of five hundred dollars, which agreement is marked as an exhibit and attached to and made a part of the complaint. The exhibit is entitled "Guaranty—Limited in Amount" and provides that respondent, therein designated as the seller, should sell his goods to appellant Becker, therein called the buyer, on credit, and Birkmaier was guarantor of such credit up to five hundred dollars.

At the time the guaranty was executed by Birkmaier, Becker was entering the retail meat business at Cle Elum. He opened an account with respondent, and thereafter purchased goods until December 18, 1929, when he became insolvent and made an assignment for the benefit of his creditors to one Beeson, as assignee. At the time of making the assignment, Becker owed respondent, on his current monthly account, the above balance.

It is agreed in the stipulated facts herein that the assignment was made, and that the assignee proceeded thereunder in all respects in conformity with the statute, Rem. Comp. Stat., § 1086, *et seq.,* governing such

assignments. The assignee took possession of the assigned property, being the unexempt community property of appellants Becker and wife, and converted it into cash. He also forthwith published the notice to creditors required by statute.

Respondent made proof of, and filed, its claim with the assignee for the balance here in suit. Thereafter, in April, 1930, upon the lapse of three months provided in § 1091, *supra,* the assignee filed his report with the court; and the court, among other things, ordered that the assignee should pay a dividend of twenty-five per cent to the creditors, which is allowed by § 1093, *supra.* In accordance therewith, the assignee forwarded to respondent his check for $73.28, being twenty-five per cent of its claim, which check respondent received, but never endorsed, negotiated or cashed, and retained it until the trial of this action, when it was introduced in evidence as an unaccepted and uncashed check.

Appellants Becker and wife and Birkmaier and wife appeared and defended separately.

On these agreed facts, the trial court entered judgment against all of appellants for the amount sued for, with interest and costs, and an additional judgment against appellants Birkmaier and wife for fifty dollars attorney's fees. Appellants have joined in one appeal and appearance on appeal from that judgment.

The trial judge stated in his memorandum opinion that

"Birkmaier being the owner of a meat market sold it to Becker on credit which contemplated and required that Becker earn in the conduct of the business the money with which to pay the purchase price, and the guaranty in this case was in the business of the community incident to and connected with the payment for the market sold to Becker. I think clearly the necessity of Becker operating the business was recognized as an

element of the sale of the business to Becker, and the guarantee which aided and made possible such operation was in aid of the community business, but more than that was actually made in contemplation of, and as a part of, the advancement of community business. I find the guaranty to be a community obligation. This disposes of the only fact not stipulated.''

The stipulation also contained the following agreed facts: That Becker, at the time the guaranty was signed, owed Birkmaier and wife various sums of money in payment for practically all of the stock of fixtures and equipment being used by Becker in the operation of the meat market; and that, during all of that time, Becker was financially unable to pay in full the sums so owed, other than by re-sale of the market, or through the contemplated profits therefrom; that, upon making the assignment, Becker discontinued business in the meat market, and at all times since Birkmaier has been conducting a retail meat market in the same location and with the same fixtures and equipment which had been used by Becker, the same having been set aside to him in the assignment proceedings on chattel mortgage.

As to the guaranty by appellant Birkmaier, it is limited in amount to five hundred dollars and contains a clause reading:

''It is agreed, however, that our liability hereunder is limited to Five Hundred and no/100 Dollars, the said Seller reserving the right to exceed that limit of credit at its own risk, without releasing us from liability hereunder.''

In a stipulated exhibit, it appears that, on September 8, 1930, the account against Becker amounted to $556.96. Thereafter three items of $44.21, $38.34 and $3.10 were sold to Becker on October 10, 1930, which items, together with the excess of $56.96, aggregating

$142.61, appellants Birkmaier contend were in excess of the guaranty.

The terms of the guaranty are somewhat equivocal; but the seller had the legal right to apply the credits of payments as desired, and when so applied on the current account it was reduced to below the five hundred dollar guaranty. When so reduced, it was within the provision "without releasing us from liability" under any reasonable construction.

In additional authorities filed by appellants after submission of the case on oral argument, cases are cited to the effect that, where the consideration for a guaranty or a mere suretyship moves to a third party and not to the community, the debt created is a separate debt, *Spinning v. Allen,* 10 Wash. 570, 39 Pac. 151; and that the husband's gratuitous bond is not a community debt where it was not given in a community enterprise. *Kanters v. Kotick,* 102 Wash. 523, 173 Pac. 329; *Case Threshing Machine Co. v. Wiley,* 89 Wash. 301, 154 Pac. 437; *Union Securities Co. v. Smith,* 93 Wash. 115, 160 Pac. 304, Ann. Cas. 1918E 710.

These cases do not apply to the situation here, where there was a benefit running to the community and the debt guaranteed was not purely a suretyship or gratuitous bond.

The main question on which the trial court decided that respondent was entitled to recover was that the assignment for the benefit of creditors was void, or voidable, because of the operation of the Federal bankruptcy law, in effect since 1898; and any creditor not having received payment of his claim in full would be entitled to ignore the assignment and the dividends allowed, and proceed to collect his claim against the principal debtor and the guarantor.

Appellants contend that respondent is estopped to maintain this action because it assented to and par-

ticipated in the assignment for benefit of creditors, duly filed and proved its claim with the assignee, and received and accepted his first dividend check from the assignee, which it never returned.

All the first assertions are correct, but the assertion that the dividend check was accepted is incorrect, as heretofore stated.

It is first to be noted that respondent is not seeking to subject the assets transferred to the assignee to the payment of its claim. This is an action at law upon the original claim against the assignors and against appellant Birkmaier and wife, who guaranteed the indebtedness of the assignors to a limited amount.

4 Cyc. 277 and another authority are quoted to the effect that a creditor who has filed proofs of his claim in the assignment is estopped from afterward denying the validity of the assignment. *Cerf, Schloss & Co. v. Wallace,* 14 Wash. 249, 44 Pac. 264, is also cited to the same effect. In that case, the creditor accepted a dividend under an assignment for the benefit of creditors, and it was held that he could not afterwards be allowed to impeach the assignment in order to render the assets covered thereby liable to execution of his debt. That case was decided in 1896, prior to the enactment of the Federal bankruptcy act, and is contrary to at least one late decision by the United States supreme court, as will presently be shown.

. *State ex rel. Strohl v. Superior Court,* 20 Wash. 545, 56 Pac. 35, 45 L. R. A. 177, is also quoted to the effect that the state insolvency law is in force until the bankruptcy law is invoked.

This is positively nothing else than a statutory assignment under the state insolvency law.

It is plain that our insolvency act contemplates just such proceedings in the case of insolvency of debtors as the Federal bankruptcy act. It provides for the

listing and classifying of the claims of creditors against the debtor, and that no assignment shall be valid unless made for the benefit of all creditors in proportion to the amount of their respective claims, § 1086; § 1100, *supra,* provides that the debtor may be discharged by the court having jurisdiction if the assignor has been guilty of no fraud in making an assignment, or concealment, or diversion of the property, from any further liability on account of any indebtedness existing prior to the making of the assignment and from all liability for any unsatisfied portion of any indebtedness existing prior thereto.

Under similar statutes in New Jersey and in Arkansas, the United States supreme court has held that they were essentially bankruptcy statutes; and that a general assignment for the benefit of creditors purporting to be made under a state insolvency law, was suspended in whole or in part by a national bankruptcy act, *Boese v. King,* 108 U. S. 379; and that a state is without power to make or enforce any law governing bankruptcy which conflicts with the national bankruptcy laws. *International Shoe Co. v. Pinkus,* 278 U. S. 261.

In the case last cited, the court had before it the claim of a creditor amounting to less than five hundred dollars, because of which (as here) the claimant could not have invoked bankruptcy proceedings. The creditor obtained a judgment against the debtor, whereupon the debtor began insolvency proceedings in which, under the statute of Arkansas, a receiver would be appointed to take and distribute his property as directed by that statute. The receiver sold all the property which had been transferred to him under the laws of that state. The creditor immediately caused execution to issue for the collection of its judgment, and the sheriff, being unable to find any property on

which to levy, returned the writ unsatisfied. Thereupon, the creditor brought its suit, alleging that the insolvency statute of Arkansas had been superseded and suspended by the passage of the bankruptcy act, and prayed that its judgment be paid out of the funds in the hands of the receiver, which contention was overruled by the chancery court of the state. That judgment was affirmed by the highest court of Arkansas in 173 Ark. 316, 292 S. W. 996. In discussing the case, the United States supreme court, among other things, said:

"A state is without power to make or enforce any law governing bankruptcies that impairs the obligation of contracts. . . . or conflicts with the national bankruptcy laws. [Citing cases.]

"The Arkansas Statute is an insolvency law. It is so designated in its title . . . and in the revision . . . The supreme court of the state treats it as such. [Citing cases.] It provides for surrender by insolvent of all his unexempt property . . . to be liquidated by a trustee for the payment of debts under the direction of the court. It classifies creditors, prescribes the order of the payment of their claims. . . .

"The state enactment operates within the field occupied by the Bankruptcy Act. The insolvency of Pinkus was covered by its provisions. He could have filed a voluntary petition. His application to the state court for the appointment of a receiver was an act of bankruptcy, § 3 (a), U. S. C., Tit. 11, § 21 (a); and, at any time within four months thereafter, three or more creditors having claims amounting to $500 or over could have filed an involuntary petition. § 59 (b), U. S. C. Tit. 11, § 95 (b)."

All these conditions operate in this case.

The above decision is controlling here. Bankruptcy proceedings were not invoked in that case and the creditor in that case could not have done so because its claim was less than five hundred dollars, just as in

this. It was there distinctly held that the passage of the bankruptcy act superseded the state law, at least in so far as it relates to the distribution of property and discharges to be given. See, also, *In re Tarnowski,* 191 Wis. 279, 210 N. W. 836, 49 A. L. R. 686.

Notwithstanding expressions in some of our early cases, we are bound by the decision of the supreme court of the United States in this field of the law, and conclude that the judgment of the trial court herein was right on that question.

The judgment is affirmed as to all appellants.

TOLMAN, C. J., BEALS, MILLARD, and MAIN, JJ., concur.

