[No. 10006-8-I.   Division One.   April 18, 1983.]

RAINIER NATIONAL BANK, *Respondent,* v. HERBERT
P. CLAUSING, ET AL, *Appellants.*

*Murphy & McGowan, Thomas Murphy,* and *James McGowan,* for appellants.

*James J. Lamont,* for respondent.

RINGOLD, J.—Herbert P. Clausing appeals from a judgment entered against him as a coborrower and as guarantor on past due loans from Rainier Bank (Bank).[1] He assigns error to: (1) the trial court's imposition of liability upon his marital community; (2) the trial court's failure to void his contractual obligation because of the Bank's alleged misrepresentations; and (3) the trial court's award of interest. We find no error and affirm.

BW Industries (BW) was a corporation engaged in the manufacture of cement pumping equipment. Peter Wilton was its sole stockholder. On June 21, 1978, Wilton borrowed $20,000 from the Bank, signing a promissory note providing for full payment within 60 days. By August 22, 1978, Wilton had not repaid the loan, and BW was in desperate need of funds to continue operating. Wilton sought assistance from Clausing,[2] since 1976 a major investor in BW.

On September 29, 1978 Clausing accompanied Wilton to the Bank to seek additional funds. They requested a

---

[1]Unless otherwise noted, "Bank" refers to the Bellevue Midlakes Branch of Rainier National Bank.

[2]We refer to the Clausing marital community in the singular.

renewal of the $20,000 loan already made to Wilton and by then past due plus a new loan of $15,000. The Bank granted the new $15,000 loan, Clausing and Wilton signing a promissory note for $15,000 as comakers. The Bank also agreed to renew the $20,000 past due loan upon Wilton's execution of a new promissory note and Clausing's guaranty of the note. Wilton executed a new promissory note for $20,000 bearing interest at 12 percent, thus renewing his prior obligation. Clausing then executed a guaranty agreement securing payment of Wilton's $20,000 note.

The guaranty agreement originally provided for unlimited liability, but was changed to limit Clausing's liability to a principal amount of $20,000. The agreement provides in pertinent part:

> 1. To induce the Bank to grant or extend and/or continue to grant or extend to or for the benefit of the Customer such loan(s), . . . the Guarantors, and each of them (if more than one), and their respective marital communities, hereby jointly and severally guarantee to the Bank . . . payment . . . from the Customer to the Bank, . . . including in such indebtednesses and/or liabilities (and in addition to whatever limiting amount may be set forth herein), all interest, charges and expenses accrued with respect thereto, . . . up to a limiting principal amount of _____ dollars [$20,000 written in], . . .

Within 2 months of the execution of these loan documents Wilton filed a petition for bankruptcy and his liability as maker of the $20,000 note and as comaker of the $15,000 note was discharged. The Bank sought payment of the two notes from Clausing and upon his refusal brought this action.

## COMMUNITY LIABILITY

Clausing's primary contention is that the original $20,000 loan to Wilton was for Wilton's personal use, of no possible benefit to Clausing or his marital community, and therefore a gratuitous lending of credit unenforceable against his community assets. The trial court entered no finding concerning the purpose for or use Wilton made of the original

$20,000 loan later guaranteed by Clausing. It did, however, enter the following regarding community liability:

> The defendants' involvement with BW Industries and Mr. Wilton was based on the expectation that the defendants and the marital community comprised thereof would benefit financially. All the acts performed on September 29, 1978, as set forth above by the defendant Herbert P. Calusing, [sic] were done with the expectation that he, his wife, and their marital community would benefit financially.

Finding of fact 6.

> All the acts in the above-referenced matter performed by the defendant Herbert P. Clausing were performed for the benefit of Herbert P. Clausing, Margerie Illa Clausing, his wife, and the marital community comprised thereof, and therefore, they are all liable pursuant to the terms of the two promissory notes and guaranty.

Conclusion of law 10.

An appellate court will not substitute its judgment for that of the trial court where the trial court's findings are based on conflicting testimony. *Beeson v. ARCO,* 88 Wn.2d 499, 563 P.2d 822 (1977). Appellate review is limited to determining whether substantial evidence supports the findings and, if so, whether the findings support the trial court's conclusions of law and judgment. *Ridgeview Properties v. Starbuck,* 96 Wn.2d 716, 638 P.2d 1231 (1982).

The court's finding of expected financial benefit is supported by substantial evidence. Clausing testified that he and his wife expected to benefit financially from his involvement with BW, and that the income derived therefrom was directed toward community purposes. He also testified to the value of BW's manufacturing rights, and that he fully expected to recover on the BW debts he had guaranteed. Although Clausing stated that he could not possibly have received any material benefit from lending money to Wilton for personal expenses, the trial court could have inferred from the evidence that Clausing guaranteed repayment of the prior loan in order to secure the new $15,000 loan for BW's operating costs. As a means to

this end, the guaranty was made with the requisite expectation of financial benefit. That the $20,000 may not have been spent exclusively on BW was immaterial.

The trial court's finding of expected benefit also supports its conclusion of community liability. *Ridgeview.* A suretyship obligation of one spouse creates a presumption of community liability. *Warren v. Washington Trust Bank,* 19 Wn. App. 348, 575 P.2d 1077 (1978). The party seeking to avoid the obligation has the burden of rebutting this presumption by clear and convincing evidence. *Warren.* The presumption may be rebutted by a showing that the spouse who incurred the debt or obligation did so without "the intention or expectation, at the inception of the transaction, . . . that a material economic benefit would accrue to the community." *Warren,* at 360.

Clausing argues that the presumption of community liability was rebutted, relying on *Bank of Wash. v. Hilltop Shakemill, Inc.,* 26 Wn. App. 943, 614 P.2d 1319 (1980). In *Hilltop* the husband had acted as surety on bank loans made to his son's corporation. Bank officers and the husband testified that the husband anticipated no financial gain as a result of the guaranty, having been motivated solely by filial devotion. *Hilltop,* at 948. We held that substantial evidence supported the trial court's finding that the presumption of community liability had been rebutted, and affirmed. Here, in contrast, Clausing was motivated purely by business interests, *cf. Sun Life Assur. Co. of Can. v. Outler,* 172 Wash. 540, 20 P.2d 1110 (1933), the record revealing a continuous financial involvement in BW. Clausing bound his marital community by signing the guaranty agreement.

## MISREPRESENTATION

Clausing next contends that his guaranty of the $20,000 renewal loan was unenforceable because it was induced by Bank officers' misrepresentations that proceeds from the original loan to Wilton had been used exclusively for BW. The victim of a fraud or misrepresentation induc-

ing his assent has a voidable duty. *Alexander Myers & Co. v. Hopke,* 88 Wn.2d 449, 565 P.2d 80 (1977). Fraudulent misrepresentation requires proof of: (1) a false statement; (2) upon which the party seeking to avoid the contract was entitled to rely and (3) did rely; (4) resulting in injury. *See Kruger v. Redi–Brew Corp.,* 9 Wn. App. 322, 511 P.2d 1405 (1973); J. Calamari & J. Perillo, *Contracts* §§ 9–13 to 9–16 (2d ed. 1977).

The court entered no finding that the Bank misrepresented the nature of the prior $20,000 loan. No finding on a material issue is presumptively a negative finding entered against the party with the burden of proof. *Batten v. Abrams,* 28 Wn. App. 737, 626 P.2d 984 (1981); *accord, Golberg v. Sanglier,* 96 Wn.2d 874, 639 P.2d 1347 (1982). As the party seeking to avoid enforcement of the agreement, Clausing had the burden of proving misrepresentation. *Cf. Beckendorf v. Beckendorf,* 76 Wn.2d 457, 457 P.2d 603 (1969) (common law fraud). The trial court's implied finding against Clausing on this issue is supported by the evidence. *Beeson.* Two Bank officers testified that they made no representations to Clausing regarding the intended or actual use of the prior $20,000 loan.

Aside from failing to establish the false statements, Clausing also failed to show justifiable reliance thereon. Where the correct information is reasonably ascertainable by the complaining party, he may not justifiably rely on the other party's statement. *Alexander Myers; Borde v. Kingsley,* 76 Wash. 613, 136 P. 1172 (1913). Here the trial court in its oral opinion, to which we may refer for guidance, *V.C. Edwards Contracting Co. v. Port of Tacoma,* 83 Wn.2d 7, 514 P.2d 1381 (1973), specifically found that Clausing had no right to rely on the Bank employee's statements:

> [T]he court cannot conceive that there would have been any circumstances whereby a man of Dr. Clausing's intelligence and expertise, would be relying upon what amounts to what we should call "ribbons clerks." . . . They are relatively minor officers in an outlying bank. . . . [I] really feel that Dr. Clausing found out all

there was to know about Mr. Wilton and if there had been any question about what the previous loan was for, he could have asked for the underlying documents which obviously would be there, and he would know they would be there.

Clausing failed to meet his burden of proving misrepresentation.

## AMBIGUITY

■ Clausing's final contention is that the guaranty agreement is ambiguous. He argues that the provision limiting his liability to $20,000 is inconsistent with the preceding sentence requiring payment of "all interest, charges and expenses accrued with respect thereto, . . . up to a limiting principal amount of [$20,000]," and that the trial court erroneously failed to interpret the agreement against its drafter, the Bank. Whether the agreement is ambiguous is a question of law subject to independent appellate review. *General Tel. Co. v. C-3 Assocs.,* 32 Wn. App. 550, 648 P.2d 491 (1982); *Wilson v. Howard,* 5 Wn. App. 169, 486 P.2d 1172 (1971). We may not read an ambiguity into the agreement if it can reasonably be avoided by interpreting the contract as a whole. *Green River Vly. Found., Inc. v. Foster,* 78 Wn.2d 245, 473 P.2d 844 (1970).

No ambiguity requiring interpretation against the Bank appears. *Cf. Gaylord v. Tacoma Sch. Dist. 10,* 88 Wn.2d 286, 559 P.2d 1340, *cert. denied,* 434 U.S. 879 (1977). The agreement requires the guarantor to pay interest "in addition to whatever limiting amount may be set forth herein . . . up to a limiting *principal* amount . . ." (Italics ours.) The agreement required Clausing as the guarantor to pay interest on the $20,000.

## ATTORNEY'S FEES

The Bank seeks its attorney's fees and costs under RAP 18.1(a), authorizing such awards "[i]f applicable law grants to a party the right to recover [them]". All three loan documents—the guaranty agreement and both promissory notes—provide for the Bank's recovery of attorney's fees.

We award the Bank $3,000 attorney's fees and affirm the judgment with costs.

ANDERSEN, C.J., and SCHOLFIELD, J., concur.

Reconsideration denied May 24, 1983.