# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| COPPER LEAF, LLC, a Washington limited liability company, | No. 58171-0-II |
| Appellant, | |
| v. | |
| ACE PAVING CO, INC., a Washington corporation, FIVE C's, a Washington general partnership, NORTHWEST ASPHALT, INC., a Washington corporation, BACKHOE SERVICES, INC., a Washington corporation, BRUCE R. CHRISTOPHERSON and NANCY CHRISTOPHERSON, individually and the marital community comprised thereof, ROY T. CHRISTOPHERSON and SUSAN W. CHRISTOPHERSON, individually and the marital community comprised thereof, LINDA D. NEWSOME, LANCE H. DESPAIN and JENNIFER W. DESPAIN, individually and the marital community comprised thereof, CASEY E. RIBERA and TIFFANY A. RIBERA, individually and the marital community comprised thereof, JOSH M. GILL and LORI J. GILL, individually and the marital community comprised thereof, | PUBLISHED OPINION |
| Defendants below, | |
| RICHARD N. CHRISTOPHERSON and JANET CHRISTOPHERSON, individually and the marital community comprised thereof, | |
| Respondents. | |

CRUSER, C.J.—This is an appeal from the trial court's order denying Copper Leaf's motion to enter judgment against the marital community of Richard and Janet Christopherson on a confession of judgment that was signed by Richard but not by Janet.[1]

Richard personally guaranteed several business loans taken out by Ace Paving and other companies. The companies defaulted on the loans and entered into a forbearance agreement with their creditor, Copper Leaf, followed by an amendment to that agreement. In the amendment, Richard and the other debtors agreed to execute and deliver a confession of judgment to Copper Leaf. The debtors agreed that Copper Leaf could file the confession and obtain judgment against them if they defaulted on the loans again. The confession provided that the debtors consented to judgment against them "without the necessity of personal service, notice, hearing or prejudgment presentment" and waived their defenses to entry of judgment. Clerk's Papers (CP) at 12. The forbearance agreement, the amendment to that agreement, and the confession were all signed by Richard. The amendment specified that Richard was signing in his marital capacity, but the original forbearance agreement and the confession did not. Janet did not sign any of the documents.

After the debtors defaulted on the loans again, Copper Leaf moved to enter judgment on the confession twice. The court granted Copper Leaf's first motion and entered judgment ex parte against multiple defendants, including the Christophersons' marital community and Richard as an individual. The Christophersons moved to vacate the judgment against their marital community, arguing that without Janet's signature, the confession did not bind the community to a judgment for Copper Leaf's claims. The Christophersons argued that the confession of judgment statute

---

[1] Because Richard and Janet Christopherson share a last name, we refer to them by their first names.

requires adherence to certain procedural protections before a defendant agrees to waive procedural due process, and that Janet was not afforded those protections as to the Christophersons' marital community property. The trial court agreed and vacated the judgment against the Christophersons' marital community without prejudice in January 2023.

Copper Leaf brought its second motion to enter judgment against the Christophersons' marital community in March 2023, arguing that it cured the due process concern by giving Janet notice of its intent to seek judgment against the community. Copper Leaf also argued that it did not possess a copy of the amendment when it made its first motion, and that the amendment bound the community to judgment because Richard signed the amendment in his marital capacity. The Christophersons responded that Copper Leaf's second motion to enter judgment against the marital community was actually an untimely motion for reconsideration of the court's prior ruling and that the due process concerns were not cured. Copper Leaf responded that its second motion contained new facts and new analysis that warranted consideration on the merits, and that the court's prior ruling was entered without prejudice so it was entitled to move again. The court initially expressed that the motion seemed like a motion for reconsideration but then agreed to consider the new facts and law presented by Copper Leaf. The court ultimately denied Copper Leaf's second motion to enter judgment against the Christophersons' marital community after considering its merits.

Copper Leaf appeals, arguing that we should review the trial court's ruling de novo and hold that the trial court erred by concluding that confessions of judgment require both spouses' signatures to be enforceable against community property. Copper Leaf maintains that the community property statute grants both spouses equal control of community property and that Richard, therefore, had authority to enter the confession on behalf of the community. Copper Leaf

3

also argues that the amendment constitutes a waiver of the community's defenses to entry of the confession, that the community is estopped from contesting entry of judgment, and that Richard bound the community to the underlying debt.

The Christophersons respond that the appeal is actually a time-barred appeal from the court's January 2023 order vacating the earlier judgment against the marital community because the trial court treated Copper Leaf's second motion to enter judgment as an untimely motion for reconsideration of the January 2023 order. The Christophersons also maintain that we should review the court's ruling for an abuse of discretion based on their view that the motion was actually a motion for reconsideration. As to the merits, the Christophersons argue that the trial court correctly concluded that one spouse cannot bind a marital community to a confession of judgment because the statutory framework and due process implications make a confession of judgment distinct from an ordinary contract. The Christophersons also argue that the amended forbearance agreement's language did not waive Janet's ability to contest the confession and did not constitute an inconsistent statement giving rise to equitable estoppel.

With respect to the threshold question of whether the trial court reached the merits of Copper Leaf's second motion to enter judgment against the marital community, we agree with Copper Leaf that the court did not treat Copper Leaf's second motion to enter judgment as an untimely motion for reconsideration. We therefore reject the Christophersons' argument that this is a time-barred appeal and review the merits of the trial court's ruling de novo.

Turning to the merits, we agree with the Christophersons that the confession of judgment statute requires the signature of both spouses to bind community property to an agreement that judgment may be entered against a marital community without notice and a hearing. We reject

Copper Leaf's waiver and estoppel arguments and decline to reach the question of whether Richard bound the community to the *underlying debt* (as opposed to the confession itself) because that issue is immaterial to whether the confession binds the community. Therefore, we affirm.

FACTS

I. BACKGROUND

Richard personally guaranteed several business loans taken out by Ace Paving and other companies. Janet was not involved in the businesses and did not guarantee the loans. The businesses defaulted on the loans in 2013. Upon default, the debtors entered an initial forbearance agreement with Copper Leaf, the creditor on each of the loans.[2] The forbearance agreement provided Copper Leaf with rights to additional collateral in exchange for Copper Leaf's forbearance of exercising its remedies against the debtors until April 2014. Richard signed the forbearance agreement in his individual capacity, but not in his marital capacity. The parties then entered an amended forbearance agreement in May 2014.

The amendment provided that the debtors "shall execute and deliver a Stipulated Confession to Judgment" to be held by Copper Leaf until the debtors paid off their debts as provided by the forbearance. CP at 374. In the amendment, the debtors warranted that they possessed "all requisite power and authority to execute this First Amendment and to perform all of its, his or her obligations hereunder." *Id.* at 376. The amendment provided that the debtors waived their defenses against collection of the debts and agreed that, if they defaulted again,

---

[2] The businesses also took out loans from another bank, but Copper Leaf purchased the other loans in 2013 and was the only bank involved in the forbearance and subsequent litigation.

Copper Leaf could file the confession/stipulation and collect judgment against them. Richard signed the amendment "individually and on behalf of his marital community." *Id.* at 385.

After entering the amended forbearance, Richard and other debtors signed a confession of judgment consenting to a judgment against them for the outstanding principal, costs, and interest owed to Copper Leaf. The confession provided,

> Defendants agree that in the event of a default . . . this Confession of Judgment authorizes the entry of the final judgment, pursuant to RCW 4.60 *et seq.*, without the necessity of personal service, notice, hearing or prejudgment presentment, and that there are no defenses to the entry of this judgment.

*Id.* at 12. The body of the confession named both "Richard N. Christopherson, individually and in his marital capacity," and "Janet Christopherson, individually and in her marital capacity" as debtors and listed them in the case caption as defendants. *Id.* at 9-10. Richard signed and acknowledged the confession before a notary and attested,

> I, Richard N. Christopherson, acknowledge the debt owed to Copper Leaf[ ] LLC, as more fully set forth in this Confession of Judgment, and I authorize entry of judgment against me for the amount set forth in the judgment summary above and the order set forth below.

*Id.* at 22. Richard's signature page did not indicate that he was signing in his marital capacity. The following page contained the same attestation for Janet, but was not signed by her. Richard also signed approving the form of an attached proposed order for entry of judgment, individually and in his marital capacity.

After entering the amended forbearance agreement, Copper Leaf collected payments from the debtors directly and through a receivership action naming Richard as a respondent, but not naming Janet as a respondent. The details of the receivership are not at issue in this appeal.

II. LITIGATION

A. Copper Leaf's First Motion to Enter Judgment Against the Christophersons

In January 2022, following the debtors' default on the amended agreement, Copper Leaf moved in Kitsap County Superior Court to enter judgment on the confession of judgment. The court granted Copper Leaf's motion and entered judgment ex parte against the named defendants, including against Richard individually and against the Christophersons' marital community.[3] The total amount of the judgment was in excess of $11 million. Janet and Richard did not receive notice prior to entry of the judgment and learned of the judgment against them when they received post-judgment garnishment notices in July 2022.

The Christophersons then moved to vacate the judgment against their marital community, arguing that the judgment was void because the judgment exposed Janet's interest in marital community property to deprivation without any pre-judgment process *or* waiver of process. Essentially, the Christophersons argued that the procedures in chapter 4.60 RCW allow plaintiffs to circumvent important pre-judgment safeguards (notice and a hearing) only with the consent of all those at risk of a deprivation of property. The Christophersons maintained that because Janet never waived her due process rights by consenting to judgment using the statutorily required

---

[3] Although Janet was named as an individual defendant in the action, Copper Leaf excluded her from its motion to enter judgment and the court did not enter judgment against Janet in her individual capacity.

procedures, she was entitled to notice and a hearing before judgment could be entered against the Christopherson community.[4]

Copper Leaf responded that in Washington, each spouse's individual debt is presumptively community debt and the Christophersons did not rebut that presumption. Copper Leaf also argued that Richard waived any right the community would have had to contest entry of judgment and that the community was estopped from arguing against entry of judgment for any reason. At oral argument, Copper Leaf emphasized its argument that the underlying debt was a community obligation. The Christophersons countered that, as a result of Copper Leaf seeking judgment by confession rather than bringing an ordinary civil action, they were not afforded a forum to rebut the presumption of community debt and would not have such a forum unless the court vacated the judgment.

The trial court agreed with the Christophersons and vacated the judgment against the Christophersons' marital community in January 2023.[5] At oral argument, the trial court explained

---

[4] The Christophersons alternatively argued that the amount of the judgment was unsupported by the record, and on that ground, asked for the judgment against Richard individually to be vacated in addition to the judgment against the community. This argument was rejected by the trial court and is not at issue in this appeal.

[5] The court at oral argument indicated that it was granting the motion to vacate judgment with respect to "Janet Christopherson's marital community property" but the written order states that judgment was "vacated as against the marital community of Richard Christopherson and Janet Christopherson." VRP at 16, CP at 312. There has been no argument, at the trial court or in this appeal, about whether there is a difference between a judgment against the community and a judgment against *Janet's* interest in the community. But the general rule is that currently-married spouses each hold a vested one-half interest in the marital community property that is not divided except when one of the spouses lacks sufficient separate property to satisfy an individual tort judgment against them. *See Lyon v. Lyon*, 100 Wn.2d 409, 413, 670 P.2d 272 (1983); *deElche v. Jacobsen*, 95 Wn.2d 237, 244-45, 622 P.2d 835 (1980); *Nichols Hills Bank v. McCool*, 104 Wn.2d 78, 88, 701 P.2d 1114 (1985); *Keene v. Edie*, 131 Wn.2d 822, 833-35, 935 P.2d 588 (1997).

8

that in its view, a confession of judgment is "a shortcut" that constitutes a statutorily-governed

waiver of due process and that under the statute, all parties must sign the confession to be bound

by it, so because Janet did not sign the confession of judgment in this case, she was entitled to the

ordinary procedural rights of notice and a hearing. Verbatim Rep. of Proc. (VRP) at 15. The trial

court relied on *Grossman v. Will*, 10 Wn. App. 141, 153, 516 P.2d 1063 (1973), stating,

> [O]ne of the things that I believe that that case does seem to represent is that confession of judgment cases are different. They're different when it comes to community property, because in those cases, the wives in their community property were found to be -- that the judgment against them was to be vacated because it was inappropriate because they hadn't signed.

*Id.* at 14. The court made an oral ruling that it was vacating the judgment "as it applies to Janet

Christopherson's marital community property." *Id.* at 16.

The parties crafted an order. In an email exchange with counsel for the Christophersons,

Copper Leaf asked that the order contain language clarifying that "the judge didn't hold the debt

at issue isn't community debt or that Copper Leaf doesn't have the ability to pursue a claim against

the community going forward." CP at 450. Copper Leaf expressed concern that without such

language, a future judge reading the order might think that the ruling was made "on the merits as

to the community liability issue as opposed to making a ruling that is based (from what I can tell)

solely on a procedural due process issue." *Id.* The Christophersons agreed and incorporated the

request.

The court adopted the proposed order and vacated Copper Leaf's judgment "as against the

marital community of Richard Christopherson and Janet Christopherson" without prejudice. *Id.* at

312. The order did not explain the court's rationale and indicated, "Nothing in this Order is

intended to prevent Plaintiff from pursuing claims against the Christopherson marital community,

nor to prevent the Christophersons from raising any defenses against such claims." *Id.* Copper Leaf did not appeal from that order.

B. Copper Leaf's Second Motion to Enter Judgment Against the Christophersons

In March 2023, Copper Leaf again moved for entry of the confessed judgment "against the Christopherson marital community." *Id.* at 417. Copper Leaf argued that it cured any due process concerns by giving Janet notice of its intent to file its second motion to enter judgment. Copper Leaf also argued that Richard waived any defenses to entry of judgment on behalf of the community by signing the amended forbearance agreement in his marital capacity. Copper Leaf also argued that the community was equitably estopped from challenging entry of judgment because Richard guaranteed he had authority to bind the community when he signed the amendment. Finally, Copper Leaf argued that Richard had authority to bind the community to the underlying debt.

The Christophersons responded that Copper Leaf's motion was actually an untimely motion for reconsideration because it was asking the court to re-enter judgment against the community after vacating judgment against the community on the same confession. The Christophersons argued that the court had already rejected the confession as a basis for judgment against them and that Copper Leaf had not added anything to its position that would change the court's rationale for concluding that the confession was insufficient as against the marital community. The Christophersons argued that giving Janet notice of Copper Leaf's intent to seek entry of judgment did not satisfy her due process rights and that Copper Leaf's only cure would be to sue the community in an ordinary action. The Christophersons characterized Copper Leaf's argument as follows:

> Copper Leaf grievously misinterprets this Court's order vacating the judgment. It wrongly believes that the problem with the vacated judgment was not that it was a shortcut judgment entered by confession without both spouses signing, but that an otherwise valid judgment against the community was defective solely because it was entered ex parte, and all that is required to fix the problem is a six-day notice of presentation at a hearing where all defenses are waived.

*Id.* at 440 (italics omitted). The Christophersons also repeated the arguments they made in their earlier motion to vacate, including that the community property statute granting both spouses management and control of community property did not grant Richard the broad power to waive procedural rights on behalf of Janet with respect to their shared community property.

At oral argument on Copper Leaf's second motion to enter judgment against the community, the court expressed that it had already considered the dispositive issue when it granted the Christophersons' motion to vacate. The court explained that its prior ruling was based on the fact that confessions of judgment "are not like other hearings where the marital community can be bound by one person or the community property issue comes into play because it was a particular situation where they didn't get to defend against it, and they were waiving rights." VRP at 20. The court explained,

> I specifically said that Ms. Christopherson, because she did not sign the document and sign the agreement in any way, she -- the marital community could not be -- she could not be bound under the marital community, and that Mr. Christopherson could not bind the marital community without her signature.

*Id.* The court expressed that Copper Leaf's second motion to enter judgment appeared to argue "the very same thing" that was at issue when the court granted the Christophersons' motion to vacate. *Id.*

Copper Leaf did not share the court's recollection and argued that its second motion to enter judgment against the Christophersons added additional facts and law that the court had not

previously considered. Factually, Copper Leaf argued that it had only recently received the amended forbearance agreement and that the amendment included waivers that would apply to the community's interest. Legally, Copper Leaf argued that its additional case law, including *Thygesen v. Neufelder*, 9 Wash. 455, 37 P. 672 (1894), supported its position. The court expressed that the motion seemed "like a motion to reconsider" and that the new material did not change the dispositive issue. *Id.* at 25. The court also explained,

> Now, that's not to say, [plaintiff's counsel], that you can't litigate and sue the marital community. That's a different thing. That's where there's an opportunity to defend.

*Id.* at 24.

The court heard additional argument from Copper Leaf regarding the amendment and the new cases it cited in its motion. Copper Leaf explained that although its former attorneys had a copy of the amendment, its new attorneys did not receive the amendment until after the court's ruling vacating judgment against the Christophersons. Copper Leaf did not attach the amendment to its motion or provide the court with a bench copy of the amendment, so the court determined it could not make a ruling at the time of oral argument. The court agreed to review the amendment and the new cases cited by Copper Leaf before coming to its decision.

Ultimately, the court denied Copper Leaf's second motion to enter judgment against the Christophersons.[6] The order, proposed by the Christophersons, provides that the court reviewed all the parties' submitted materials and does not explain the court's reasoning outside of its reasons stated at oral argument. Copper Leaf appeals.

---

[6] The Christophersons attach to their briefing an email from the clerk of court to the attorneys, attempting to supplement the record to better explain the court's reasoning. We decline to consider this supplemental filing because it has not been accepted pursuant to RAP 9.11.

DISCUSSION

I. TIMELINESS

The Christophersons argue that this appeal is time-barred because Copper Leaf's second motion to enter judgment against them was actually an untimely motion for reconsideration of the trial court's January 2023 ruling vacating the previously entered judgment against them. Copper Leaf argues that the court reached the merits of its motion to enter judgment. We agree with Copper Leaf.

The Christophersons assert, without argument, that the trial court viewed Copper Leaf's motion to enter judgment as an untimely motion for reconsideration. It is true that during oral argument on Copper Leaf's motion to enter judgment, the court expressed that the motion "seem[ed]" like a motion for reconsideration. VRP at 25. However, the court did not indicate that it was considering the motion as such. And after hearing argument on the motion, the court wanted to take a closer look at the additional cases and facts presented by Copper Leaf before making a ruling. The court's order (proposed by the Christophersons) indicates plainly that the court considered the merits before denying Copper Leaf's motion to enter judgment and the Christophersons have not shown otherwise. Accordingly, we reject the Christophersons' argument that this appeal is actually a time-barred appeal from the trial court's January 2023 ruling vacating the previously entered judgment against them.[7]

---

[7] Copper Leaf makes three alternative arguments as to the timeliness issue: (1) that that the community is equitably estopped from arguing that the March 2023 motion was actually a late motion for reconsideration, (2) that Richard waived this argument on behalf of the community by signing the amended forbearance agreement, and (3) that the January 2023 order was not a final, appealable decision because it was entered without prejudice. Because we agree with Copper Leaf that the trial court reached the merits of its motion to enter judgment against the Christophersons, we need not address Copper Leaf's alternative arguments regarding the timeliness issue.

## II. STANDARD OF REVIEW

Copper Leaf argues that if we reach the merits of the trial court's ruling, we should review it de novo. The Christophersons respond that we should review the trial court's ruling for an abuse of discretion because the trial court's decision was a discretionary ruling not to entertain an untimely motion for reconsideration. Having determined above that the trial court did not treat Copper Leaf's second motion to enter judgment as a motion for reconsideration, we reject the Christophersons' argument and agree with Copper Leaf.

We review questions of law and conclusions of law de novo. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 879-80, 73 P.3d 369 (2003). We also review de novo the construction and legal effect of a contract, including whether a contract waives a party's rights. *In re Est. of Petelle*, 195 Wn.2d 661, 665, 462 P.3d 848 (2020). Additionally, "[w]here the record at trial consists entirely of written documents and the trial court therefore was not required to 'assess the credibility or competency of witnesses, and to weigh the evidence, nor reconcile conflicting evidence,' the appellate court reviews de novo." *Dolan v. King County*, 172 Wn.2d 299, 310, 258 P.3d 20 (2011) (internal quotation marks omitted) (quoting *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 252, 884 P.2d 592 (1994) (plurality opinion)). Here, the trial court's record consisted entirely of written material, the material facts were undisputed, and the parties' arguments were about the legal effect of the confession of judgment signed by Richard. Accordingly, we review its ruling de novo.

## III. CONFESSION OF JUDGMENT

Copper Leaf argues that the trial court erred when it refused to enter judgment against the Christophersons' marital community. We disagree and affirm the trial court's ruling.

A. LEGAL PRINCIPLES

*1. Procedural Due Process*

Governments may not deprive an individual of life, liberty, or property without due process of law. U.S. CONST. amends. V, XIV, § 1; WASH. CONST. art. I, § 3. Due process entails procedural and substantive protections. *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 216, 143 P.3d 571 (2006), *abrogated on other grounds by Yim v. City of Seattle*, 194 Wn.2d 682, 689-90, 451 P.3d 694 (2019). Procedural due process entitles individuals to notice and an opportunity to be heard to guard against erroneous deprivation. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). The hearing must be "at a meaningful time and in a meaningful manner." *Id.* (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)).

The rights to notice and a hearing are subject to waiver. *D. H. Overmyer Co. Inc., of Ohio v. Frick Co.*, 405 U.S. 174, 185, 92 S. Ct. 775, 31 L. Ed. 2d 124 (1972). Waiver of a constitutional right generally must be made "knowingly, voluntarily, and intelligently," notwithstanding that "waivers of different constitutional rights meet this standard in different ways." *State v. Herron*, 183 Wn.2d 737, 743, 356 P.3d 709 (2015).

*2. Judgment by Confession*

A judgment by confession is a type of consent judgment designed to resolve disputes among willing parties. *Copeland Planned Futures, Inc. v. Obenchain*, 9 Wn. App. 32, 36, 510 P.2d 654 (1973); *Pederson v. Potter*, 103 Wn. App. 62, 68, 11 P.3d 833 (2000). As such, a valid confession of judgment "requires the consent of both parties to the judgment." *Pederson*, 103 Wn. App. at 68.

Defendants may consent to a final judgment by confession to be entered by the court without any pre-judgment notice or a hearing. RCW 4.60.050, .070; *Pederson*, 103 Wn. App. at 67-68; *Copeland*, 9 Wn. App. at 36. Thus, unlike an ordinary contract, a confession of judgment can constitute a valid waiver of procedural due process. *Overmyer*, 405 U.S. at 185 (affirming confessed judgment because defendant knowingly, intelligently, and voluntarily waived rights to pre-judgment notice and hearing, and holding that confessed judgments do not per se not violate due process clause); *Kalb-Glibert Lumber Co. v. Cram*, 60 Wash. 664, 669, 111 P. 1050 (1910) (ordinary contract cannot "authorize the entry of a judgment against the obligor without previous notice or trial" unless the contract complies with "the formalities demanded by our statute for a confession of judgment.").[8]

Parties may consent to a judgment by confession before a suit is filed to secure the plaintiff against outstanding debts of the defendant. RCW 4.60.050. A valid confession must be in writing and must be signed and acknowledged by the parties to be bound before a notary or other officer. RCW 4.60.040, .060. The defendant must also verify the confession with an oath. RCW 4.60.060. The confession must "state concisely the facts out of which the indebtedness arose, and shall show that the sum confessed to be due, is justly due or to become due." RCW 4.60.060(2).

A plaintiff seeking to enforce a confession of judgment initiates proceedings by presenting the confession to the court. RCW 4.60.070. If the court determines the confession is "sufficient," the court "shall" then enter judgment on the confession against the defendant. *Id.* A judgment by

---

[8] *See also Davis v. Tacoma Ry. & Power Co*., 39 Wash. 256, 259, 81 P. 688 (1905) (surety bond language consenting to entry of judgment without suit had no legal effect because, absent statutory authorization, allowing such a contract "can never be a just and equitable rule, and is not permitted. The debtor must be given his statutory notice by summons, so that he may have his day in court.").

confession is executed and enforced as any other judgment would be. *Id.* However, as a consent judgment, it generally will not be reviewed on appeal absent fraud, mistake, or lack of jurisdiction. *Wash. Asphalt Co. v. Harold Kaeser Co.*, 51 Wn.2d 89, 91, 316 P.2d 126 (1957).

### 3. *Community Property*

In Washington, "each spouse has an undivided one-half interest in community property." *Nichols Hills Bank v. McCool*, 104 Wn.2d 78, 87, 701 P.2d 1114 (1985). Generally, property incurred by either spouse during marriage is community property, and both spouses possess equal power to manage and control community property. RCW 26.16.030.

Community property is generally not available to satisfy the separate debts of either spouse. *McCool*, 104 Wn.2d at 88. By statute, the separate property of either spouse is not subject to the "debts or contracts" of the other. RCW 26.16.010 (spouse); RCW 26.16.020 (domestic partner).[9] A community debt, on the other hand, may be satisfied through community property. *Oil Heat Co. of Port Angeles, Inc. v. Sweeney*, 26 Wn. App. 351, 353-54, 613 P.2d 169 (1980).

A debt incurred by either spouse during marriage is presumed to be a community debt. *Id.* at 353. The presumption of community liability can be rebutted with clear and convincing evidence. *Grayson v. Platis*, 95 Wn. App. 824, 836, 978 P.2d 1105 (1999). The party seeking to

---

[9] An exception allows judgment creditors in tort actions to reach the tortfeasor spouse's half-interest in their marital community property if the tortfeasor spouse lacks sufficient separate property to satisfy the judgment against them. *deElche v. Jacobsen*, 95 Wn.2d 237, 244-45, 622 P.2d 835 (1980). The supreme court declined to extend the exception to a judgment against one spouse arising from a contractual gift of community property. *McCool*, 104 Wn.2d at 88. The supreme court explained that, although "the countervailing interest of compensating an innocent tort victim was sufficiently strong to override the interest in protecting the marital community," the policy rationale for the tort victim exception does not apply where "both parties entered into the guaranty agreement voluntarily and had a measure of control over the legal consequences of their acts." *Id.*

avoid community liability must show that the contracting spouse entered the contract "without 'the intention or expectation, at the inception of the transaction, . . . that a material economic benefit would accrue to the community.' " *Rainier Nat'l Bank, Bellevue Midlakes Branch v. Clausing*, 34 Wn. App. 441, 445, 661 P.2d 1015 (1983) (quoting *Warren v. Wash. Tr. Bank*, 19 Wn. App. 348, 360, 575 P.2d 1077 (1978)).

Guaranty or surety obligations, like other debts, are presumed to be community obligations. *See Grayson*, 95 Wn. App. at 837; *McCool*, 104 Wn.2d at 88; *Clausing*, 34 Wn. App. at 445; *Bank of Wash. v. Hilltop Shakemill, Inc.*, 26 Wn. App. 943, 946, 614 P.2d 1319 (1980); *Warren*, 19 Wn. App. at 360. A guaranty is an agreement "to answer for the debt of another." *Wilson Ct. Ltd. P'ship v. Tony Maroni's, Inc.*, 134 Wn.2d 692, 705, 952 P.2d 590 (1998). Guaranty contracts "must be explicit and are strictly construed." *Id.* Ambiguous guaranty contracts are construed in the guarantor's favor because "the party selecting, drafting, and presenting the contract of guaranty containing such misleading language should suffer any consequences." *Seattle-First Nat'l Bank v. Hawk*, 17 Wn. App. 251, 256, 562 P.2d 260 (1977).

B. ANALYSIS

The legal question before us is whether the confession signed by Richard was sufficient to bind the Christophersons' marital community property to a final judgment under chapter 4.60 RCW, where Janet did not consent to the judgment and did not receive notice or a hearing to guard against erroneous deprivation of the Christophersons' shared community property. We affirm the trial court and hold that the confession of judgment was insufficient to authorize judgment against the Christophersons' community property because a valid confession of judgment requires the

sworn, signed, and authorized consent of all defendants to waive their rights to pre-judgment notice and a hearing.

Copper Leaf argues that Janet's signature was not necessary to bind the community because confessions of judgment are no different than any other contract with respect to community property law. The Christophersons respond that chapter 4.60 RCW requires specific consents signed and acknowledged by all parties to be bound, and thus, a confession signed by only one spouse cannot bind the marital community. The Christophersons alternatively argue that even if Richard *could* legally bind the community, he did not do so here because the confession of judgment did not specifically state that he was doing so.

We reject Copper Leaf's argument that Richard bound the community to the confession of judgment through his authority to "manage and control community property" under RCW 26.16.030.[10] A confession of judgment is not an ordinary disposition of community property, but a waiver of important procedural safeguards that guard against erroneous deprivations of property. *Overmyer*, 405 U.S. at 185. Chapter 4.60 RCW requires that to waive those safeguards and consent to judgment by confession, the confession must be signed, acknowledged, and sworn by the defendant to be bound. RCW 4.60.040, .060. As our supreme court said, "a mere simple contract cannot authorize the entry of a judgment against the obligor without previous notice or trial. . . , such a stipulation would at least require the formalities demanded by our statute for a confession

_____

[10] *See also* Br. of Appellant at 15 (citing RCW 26.16.030 for spousal authority to unilaterally enter contracts and incur community debt), 21 (citing RCW 26.16.030 for spousal authority to bind community to confession of judgment without the other spouse's authorization), 31-32 (citing RCW 26.16.030 for assertion that the confession of judgment was "binding *as to the community*" because Richard signed the confession "as an agent of the community with the authority to make such a contract on the community's behalf.").

of judgment." *Kalb-Glibert*, 60 Wash. at 669. A confession to judgment is therefore distinct from an ordinary contract both in form and consequence, and the statute granting spouses equal management and control of community property did not grant Richard the authority to confess on behalf of the community.

Turning to the question of whether Richard was otherwise entitled to bind community property to the confession without Janet's consent, we find Division One's opinion in *Grossman*, 10 Wn. App. at 153, instructive. *Grossman* was a consolidated appeal from two default judgments entered against Mr. and Mrs. Heide individually and as a marital community. *Id.* at 142-43. The judgments were based on two separate but "largely similar" settlement stipulations that were signed by Mr. Heide and his attorney, but not by Mrs. Heide. *Id.* at 144-47.

Both of the stipulations in *Grossman* settled prior lawsuits brought by Mr. Heide's creditors against "defendants Heide and others," on the condition that the defendants make certain payments. *Id.* at 143. The stipulations provided that, should the defendants fail to make the agreed payments, the defendants confessed and consented to judgment against them. *Id.* at 144. When the defendants failed to pay, the plaintiffs moved to enter judgment based on the stipulations, and the Heides did not appear to contest entry of judgment. *Id.* at 144-45. The trial court entered default judgments against the Heides individually and against their marital community. *Id.* at 148. The trial court denied the Heides' subsequent motions to vacate the judgments and for reconsideration

"on the basis there is no valid defense to the actions involved." *Id.* at 147.[11] However, the trial court reached its conclusion without considering "the validity of the settlement stipulations and the possible waiver of any such defenses resulting from the stipulations." *Id.* Division One reversed the judgments against Mrs. Heide individually and against the Heide marital community. *Id.* at 153.

The plaintiffs in *Grossman* argued that the default judgments against the Heides could not be challenged on appeal because they were actually consent judgments. *Id.* at 151; *see Wash. Asphalt*, 51 Wn.2d at 91. Division One noted that Mr. Heide, having "signed the settlement stipulations in each case," was bound to the judgments against him because the judgments were "entered in conformity with the stipulations he signed." *Grossman*, 10 Wn. App. at 148. However, Division One concluded that the judgments *could not be* considered consent judgments against Mrs. Heide or the Heide marital community because Mrs. Heide never consented to the judgments. *Id.* Division One explained that "an unauthorized consent judgment is not a valid judgment at all" and that without the debtor's authorization, a stipulation agreeing to judgment "does not bind the alleged judgment debtor." *Id.* at 151. Division One concluded: "Had Mrs. Heide been a party to authorized stipulations, she would have been deemed to have waived her defenses to the merits of the claims asserted against her. That is not the case here." *Id.* at 151-52. In other words, the stipulations consenting to judgment in *Grossman* were binding against the signing spouse but were

---

[11] Division One described the trial court's reasoning as follows:

> The orders refusing to vacate the judgments appealed from do so on the basis there is no valid defense to the actions involved. The defenses referred to apparently involve defenses to the merits of plaintiffs' actions without regard to the validity of the settlement stipulations and the possible waiver of any such defenses resulting from the stipulations.

*Grossman*, 10 Wn. App. at 147.

determined *not to be consent judgments against the marital community* or against the non-signing spouse because they did not sign the stipulations. *Id.*

Importantly, in *Grossman*, Mr. Heide's waiver was not effective as to his marital community property, even though Mr. Heide subjectively intended to bind Mrs. Heide and, by extension, their shared property, to the waiver. *See id.* at 148-49. *Grossman* thus illustrates that a consent judgment must be authorized by both spouses to bind the spouses' shared marital community.

Although *Grossman* is not binding on this division and involves settlement stipulations rather than a confession of judgment, it is persuasive. *See Pederson*, 103 Wn. App. at 68 (cases involving other types of consent judgments are persuasive as to judgments by confession). The reasoning in *Grossman* is consistent with the principle that confessions of judgment require the consent of all parties to be bound. *Id.* It is also consistent with chapter 4.60 RCW's statutory framework allowing plaintiffs to circumvent important pre-judgment safeguards (notice and a hearing) only with the signed, sworn, and acknowledged signatures of the defendants to be bound. Further, *Grossman* is consistent with Washington law explaining that, absent the formalities of the confession of judgment statute, "the essential requirement of notice and opportunity to be heard may not be entirely dispensed with" via contract. *Kalb-Glibert*, 60 Wash. at 669. And finally, *Grossman* is consistent with state and federal law requiring waivers of due process to be knowing, voluntary, and intelligent. *See Herron*, 183 Wn.2d at 743; *Overmiller*, 405 U.S. at 187.

We therefore adopt *Grossman*'s reasoning and conclude that because Janet did not authorize the confession of judgment in this case in the manner prescribed by chapter 4.60 RCW, the confession does not bind the Christophersons' marital community.

Copper Leaf makes much of the fact that in *Grossman*, Mrs. Heide was not named in the stipulation whereas here, the community was named as a party in the body of the amendment. But that does not distinguish the cases because at most, this could show that Richard *intended* to bind the community property when he signed a confession that listed the community as a party, even though he signed it individually. But in *Grossman*, the signing spouse *also* had a subjective intent to bind the community. *See* 10 Wn. App. at 148-49. And as a matter of logic, Richard's intent is not relevant to whether the confession waived *Janet*'s rights to notice and a hearing, because such a waiver must be done knowingly, voluntarily, and intelligently by Janet herself. *Herron*, 183 Wn.2d at 743.[12] Thus, the factual distinction Copper Leaf has identified does not give rise to a legal difference.

Copper Leaf also points out that in *Grossman*, the underlying debt was Mr. Heide's separate obligation, whereas here, Richard agreed to the underlying debt on behalf of the

---

[12] Copper Leaf makes no attempt to show that Janet personally consented to the waiver, nor can it, because Janet was unaware of the confession of judgment and did not have an opportunity to review it before it was signed by Richard.

community when he signed the amendment in his marital capacity.[13] This argument fails because the character of the underlying debt goes to the merits of Copper Leaf's claim and is irrelevant to whether the confession binds the community. The *Grossman* court explained that, even though the underlying debt was Mr. Heide's separate obligation, "[h]ad Mrs. Heide been a party to authorized stipulations, she would have been deemed to have waived her defenses to the merits of the claims asserted against her." *Grossman*, 10 Wn. App. at 151-52. And as a result, "the marital community property would be subjected to the payment of Mr. Heide's separate debts and Mrs. Heide would be deprived of her day in court to obtain the required protection." *Id.* at 151. In other words, the character of the debt as a separate obligation would have no bearing on the validity of a judgment entered against Mrs. Heide, provided that she had validly consented to judgment. Likewise, here, if Janet had signed, sworn, and acknowledged the confession, the confession would authorize judgment against the community *without regard to whether the underlying obligation was*

---

[13] Copper Leaf also makes the related argument that Richard's signature on the amendment validly bound the community to the debt because the Christophersons failed to present clear and convincing evidence that Richard was acting outside of his authority when he signed the amendment. Copper Leaf's arguments regarding the character of the underlying debt ask us to decide a factual issue that is not before us: whether Richard's signature on the amendment created a separate obligation or a community obligation. As an appellate court, we " 'generally cannot make findings of fact, and will not endeavor to do so based on an incomplete record in which neither party properly briefed or argued.' " *Dalton M, LLC v. N. Cascade Tr. Servs., Inc.*, 2 Wn.3d 36, 53, 534 P.3d 339 (2023) (quoting *Garcia v. Henley*, 190 Wn.2d 539, 544, 415 P.3d 241 (2018)). In the ruling that is before us in this appeal, the trial court did not need to consider the separate or community nature of the obligation created by the first amendment because the only issue before it was whether the confession was sufficient under the requirements of chapter 4.60 RCW. We decline to go beyond that issue to determine facts that are relevant to the merits of Copper Leaf's claims against the Christophersons.

*separate or community in nature* because any defense to entry of judgment would have been waived. Therefore, we are not persuaded by this attempt to distinguish the facts.[14]

Nor are we persuaded by Copper Leaf's reliance on *Thygesen v. Neufelder*, 9 Wash. 455, 37 P. 672 (1894), and *Halvorsen v. Pacific County*, 22 Wn.2d 532, 156 P.2d 907 (1945). *Thygesen* involved a deed of assignment under the Insolvency Act of 1890, an act that was later preempted by federal bankruptcy law. 9 Wash. at 455.[15] The court in *Thygesen* held that a deed of assignment surrendering community property to the court was not a conveyance of community real property that required the signatures of both spouses, but instead was "one of the methods by which the property may be subjected to the community debts" that required only the husband's signature. *Id.* at 459. The *Thygesen* court analogized in dicta that a confessed judgment against the husband for a community debt could be enforced against community property, and explained:

> The only difference between a judgment by confession and one in a regularly prosecuted action would have been as to the question of good faith on the part of the husband and the creditor; and, it having been established, such judgment could be enforced against the community property the same as any other.
> It follows that the interest of the wife in the community property is contingent upon the state of the affairs of the community as conducted by the husband.

---

[14] Judgment has already been entered against Richard as an individual. We recognize that judgments entered against one spouse are presumptively a community liability. *Whitehead v. Satran*, 37 Wn.2d 724, 725, 225 P.2d 888 (1950). However, the question of whether Copper Leaf can reach community property when *executing* judgment against Richard is not before us in this appeal. That is a distinct (albeit related) issue from whether judgment can be *entered* against the community based on Richard's confession. Here, if Copper Leaf were entitled to judgment by confession against the community, Janet would have no *pre-judgment* opportunity to contest the community's liability for the underlying debt *and* would lose any post-judgment opportunity to argue that the judgment against Richard is his separate obligation. She also would lose her ability to appeal the judgment except to argue fraud, mistake, or lack of jurisdiction. *Wash. Asphalt*, 51 Wn.2d at 91.

[15] *See Armour & Co. v. Becker*, 167 Wash. 245, 253, 9 P.2d 63 (1932) (explaining federal preemption of Washington's Insolvency Act).

*Id.* at 458. The court went on to explain, however, that "it would also always be open to her to see that the community property was not applied to the payment of other than community debts." *Id.* *Halvorsen* later relied on *Thygesen* to analogize that a certificate of abandonment, like a deed of assignment, also was not a conveyance of real property that required the signature of both spouses. 22 Wn.2d at 539-40. To the extent either case discussed confessions of judgment, they did so in dicta, and *Thygesen* suggests that, even if the husband confessed to a judgment against the community, his wife would still be entitled to challenge the merits of the underlying claim. 9 Wash. at 458. Thus, these cases do not persuade us that the confession signed by Richard validly waived Janet's right to notice and a hearing before a judgment could be entered against the Christopherson community property, in which Janet holds an undivided one-half interest while the Christophersons remain married.

Copper Leaf makes additional arguments focused on the legal effect of Richard's signature on the amended forbearance agreement as opposed to the confession. Copper Leaf argues that by signing the amendment, Richard waived all rights to contest entry of judgment on behalf of the community. We disagree because, assuming the amendment constituted a valid waiver of any defenses the marital community would have had against Copper Leaf's underlying claim, that does not determine whether a judgment *by confession* can be entered against the community. As we have described at length, judgment by confession is subject to statutory requirements that must be followed for judgment to be entered without notice and a hearing. *See* ch. 4.60 RCW. A separate contractual waiver of defenses to liability is not a substitute for a signed, sworn, and acknowledged confession of judgment itself. *Kalb-Glibert*, 60 Wash. at 669. Thus, Richard's signature on the

26

amended forbearance did not waive the community's ability to contest entry of a judgment by confession.

Copper Leaf also argues that the Christophersons are equitably estopped from arguing that Richard lacked authority to bind the community due to Richard's signature on the amended forbearance. A party arguing estoppel must show "(1) an admission, statement or act inconsistent with a claim later asserted; (2) reasonable reliance on that admission, statement, or act by the other party; and (3) injury to the relying party if the court permits the first party to contradict or repudiate the admission, statement or act." *Dep't of Ecology v. Theodoratus*, 135 Wn.2d 582, 599, 957 P.2d 1241 (1998). According to Copper Leaf, it detrimentally relied on Richard's representation that he was authorized to bind the marital community to the underlying debt and to waive defenses to liability. To the extent Richard made such a representation, we see no inconsistency with the Christophersons' present position. The Christophersons have not argued that Richard was unauthorized to bind the community to the terms of the amended forbearance or to the underlying debt. Rather, they have argued that *notwithstanding the amended forbearance*, the confession of judgment is not a waiver of Janet's right to notice and a hearing before judgment is entered against their marital community. Thus, Copper Leaf has not shown that the Christophersons are estopped from arguing against the entry of judgment on the confession.

We hold that the confession of judgment at issue here was not sufficient to bind the Christophersons' marital community to a final judgment under chapter 4.60 RCW because it was

not signed, sworn, and acknowledged by Janet.[16] Accordingly, we affirm the trial court's order denying Copper Leaf's motion to enter judgment against the Christophersons' marital community. However, our decision is not dispositive of the marital community's liability to Copper Leaf. A confession is simply one way to secure a judgment in Washington courts, and Copper Leaf is free to pursue other avenues.

## ATTORNEY FEES

Copper Leaf seeks attorney fees pursuant to RAP 18.1(a) and the terms of the amended forbearance agreement. Because Copper Leaf is not the prevailing party in this appeal, we do not grant Copper Leaf's request for attorney fees and costs.[17]

Cruser, C.J.
_____
CRUSER, C.J.

We concur:

J., J
_____
LEE, J.

Price, J.
_____
PRICE, J.

---

[16] Because we hold that confessions of judgment must be signed by both spouses to authorize judgment against community property, we need not reach the Christophersons' alternative argument that even if Richard *could* legally bind the community, he did not do so here because the confession of judgment did not specifically state that he was doing so.

[17] The Christophersons also seek attorney fees on appeal. They argue that the amendment "does not control the outcome of this appeal" but ask us to award fees if we disagree with their position. Br. of Resp't at 49. Having concluded that the amendment does not control, we decline to award fees to the Christophersons.